PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 6/27/96**

TENTH CIRCUIT

_____

| | |
|---|---|
| In re:  CASCADE ENERGY & METALS CORPORATION,<br><br>Debtor.<br>_____ | )<br>)<br>)<br>)<br>) |
| DELANO S. FINDLAY,<br><br>Appellee,<br><br>v.<br><br>JEFFREY G. BANKS, EDWIN STOLTENBERG, CHRIS WAUGH, SAMUEL HARMATZ, KENNETH CALDWELL, BERNARD HODOWSKI, PATRICIA STOLTENBERG, H.E. MOSES, COASTAL COMPUTER INVESTMENTS, DELFORD R. ASHLEY, SAM HAMBARIAN, ELMER J. DAVIS, HARMATZ & HODOWSKI, ALYCE HAMBARIAN, DAVID G. HENRY, LIONEL ASCHER, A.C. NEJEDLY, ROGER A. MANN, GRACE V. DUNCAN, ROBERT A. NICKERSON, ELLIOT WEINBERG, PETER P. SAMARIN, MANN CALDWELL PARTNERSHIP, GEORGE SLATER, PATRICIA SLATER, ROBERT DOBB, R.E. DONAHEY,<br><br>and<br><br>HERBERT W. STOLTENBERG,<br><br>Appellant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 

No. 95-4020

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 94C-764G)

---

Ronald W. Goss of Shulkin Hutton Inc., P.S., Seattle, Washington, for Appellant.

Delano S. Findlay, Salt Lake City, Utah, for Appellee.

---

Before SEYMOUR, Chief Judge, and BARRETT and LIVELY[1], Circuit Judges.

---

LIVELY, Circuit Judge.

---

This is an appeal from the district court's reversal of an order of the bankruptcy court imposing sanctions under FED. R. BANKR. P. 9011 against an attorney for the debtor. The conduct for which the attorney was sanctioned grew out of litigation described in *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557 (10th Cir.), *cert. denied, sub. nom. Weston v. Banks*, 498 U.S. 849 (1990).

After a careful review of the record, and consideration of the briefs and oral arguments of counsel, we conclude that the district court erred in reversing the decision of the bankruptcy court. Accordingly, for the reasons that follow, we reverse the judgment of the district court and direct it to reinstate the decision of the bankruptcy court imposing sanctions on the appellee, attorney Delano S. Findlay.

---

[1] The Honorable Pierce Lively, United States Circuit Judge for the Sixth Circuit, sitting by designation.

This appeal relates to an adversary proceeding in a Chapter 11 bankruptcy case in which Cascade Energy and Metals Corporation is the debtor.  Prior to Cascade Energy's bankruptcy petition, appellant Stoltenberg and others obtained a money judgment against Cascade Energy and its president, W. David Weston.  The judgment creditors then attempted to perfect a lien against California real estate known as the Telegraph Mine by filing a copy of the judgment with the County Recorder of San Bernadino County, California.  Sometime later Cascade Energy filed an adversary proceeding in bankruptcy court seeking to avoid the judgment lien against the Telegraph Mine.  The appellee, Delano S. Findlay, represented Cascade Energy.

The bankruptcy court entered two orders granting partial summary judgment in favor of Cascade Energy, invalidating the judgment lien on the ground that the recordation was ineffective to perfect a lien under California law.  These interlocutory orders were not immediately appealable.  After the bankruptcy court held that it lacked jurisdiction over other state law claims and dismissed the adversary proceeding, Cascade Energy appealed to the district court, which reversed the decision that the bankruptcy court lacked jurisdiction.  This court dismissed an appeal from the district court's decision as a non-final order.  See *In re Cascade Energy & Metals Corp.*, 956 F.2d 935 (10th Cir. 1992).

While its appeal was pending, Cascade Energy filed a motion through its attorney, appellee Delano Findlay, to require the judgment creditors, defendants in the adversary proceeding, to execute a form release with respect to the lien they had filed against the

Telegraph Mine in California. The motion and accompanying memorandum in support were signed by attorney Findlay. The supporting memorandum relied on California Code of Civil Procedure § 697.410 and purported to quote that section. However, the quotation incorrectly recited the title and, by use of ellipses, fundamentally changed the meaning of the text.

Findlay quoted § 697.410 as follows:

§ 697.410 entitled `Lien; release; damages; attorney's fees', which is applicable here, provides in pertinent part:
    (a) If a recorded . . . copy of a money judgment appears to create a judgment lien on real property of a person who is not a judgment debtor . . . the . . . property owner may deliver to the judgment creditor a written demand for a recordable document releasing the lien. The demand shall be accompanied by proof to the satisfaction of the judgment creditor that . . . the property is not subject to enforcement of the judgment against the judgment debtor.

Aplt. App. at 6.

The statute actually reads:

§ 697.410: *Erroneously identified property owner;* lien; release; damages; attorney's fees
    (a) If a recorded *abstract of a money judgment or certified* copy of a money judgment appears to create a judgment lien on real property of a person who is not the judgment debtor *because the name of the property owner is the same as or similar to that of the judgment debtor,* the *erroneously identified* property owner may deliver to the judgment creditor a written demand for a recordable document releasing the lien. The demand shall be accompanied by proof to the satisfaction of the judgment creditor that *the property owner is not the judgment debtor and that* the property is not subject to enforcement of the judgment against the judgment debtor. (omitted text in italics).

In their response, the defendants argued that § 697.410 had no application to the facts and provided no support for the plaintiff's motion. Asserting that the motion and memorandum had been filed in bad faith, the defendants made a motion for imposition of sanctions against

4

Findlay under Rule 9011. Findlay signed and filed a response in which he again relied on § 697.410.

## II.

The bankruptcy judge held a hearing on the motions to compel release of the lien and for imposition of sanctions. In its order denying the motion to release lien and granting the motion for sanctions, the bankruptcy court found that § 697.410 had no application to the lien filed by the defendants. The court stated:

> As the proper title of the statute indicates, it provides remedies to property owners who have had judgment liens erroneously filed against their property due to the similarity of their name with that of an actual judgment debtor. In his memo, Findlay has deleted all references in the statute to erroneously identified property owners . . . .

Aplt. App. at 27.

> After quoting § 697.410, the bankruptcy court continued:

> In this case, Findlay has quoted the statute to the court to read as he would like it to read. When one inserts the language that he omitted from his quote, it is obvious that the statute does not stand for the proposition that he claims it supports. On the basis of the facts presented, it is clear that the quote was meant to mislead the court. This behavior will not be tolerated.

*Id.* at 28 (footnote omitted).

Findlay then signed and filed a motion for rehearing or to amend judgment. In a memorandum in support of this motion, Findlay argued that § 697.410 had not been misrepresented or misquoted, and that it was structured to show that words had been omitted. In addition, he contended that "a plain and literal reading of C.C.P. § 697.410 shows that it

5

closely matches and is applicable to [this] case." *Id.* at 38.

The bankruptcy court heard arguments on the motion for reconsideration and ruled from the bench that its previous opinion and sanctions "will stand." *Id.* at 59. In its written order the court reimposed the $250 sanction for Findlay's conduct with respect to the initial motion to release the lien and imposed an additional sanction against Findlay in the amount of $2,295 for attorneys' fees and costs incurred in connection with Cascade's motion for rehearing or amendment of judgment. *Id.* at 62.

### III.

Findlay appealed to the district court, where the judge held a hearing on the sanction issue. Relying on an unpublished opinion of another district judge in the Circuit, the district judge in this case reviewed the bankruptcy court decision *de novo*. After such review, the judge stated, "I'm not convinced as to either of the orders that there was any bad faith or any intended misleading." Aplt. App. at 101-02. The district court then entered the order that is the subject of this appeal, reversing the sanctions imposed by the bankruptcy court.

### A.

The district court committed legal error by reviewing the sanctions order *de novo* rather than for an abuse of discretion. The judge recognized that when a court of appeals reviews a district court order imposing sanctions under FED. R. CIV. P. 11, the proper standard is abuse of discretion. Nevertheless, the district judge concluded that when a district court sits as an

6

appellate court reviewing imposition of sanctions by a bankruptcy court, the district court conducts a *de novo* review. We find no support for this conclusion.

The Supreme Court held in *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384 (1990), that "an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." *Id.* at 405. Before reaching this conclusion, the Court discussed the reasons for requiring a deferential standard when reviewing orders imposing sanctions. One reason for requiring a deferential standard is that it is particularly difficult to make distinctions between factual findings and legal conclusions "in the Rule 11 context." *Id.* at 401. Further, in deciding whether an attorney has violated Rule 11, "a court must make some assessment of the signer's credibility." *Id.* at 402. This is a fact-based determination. "When an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable . . . ." *Id.* at 401. Continuing its analysis, the Court stated: "Familiar with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11." *Id.* at 402.

The Court then considered the similarity between determinations under Rule 11 and under the Equal Access to Justice Act (EAJA). The Court quoted language from *Pierce v. Underwood*, 487 U.S. 552, 559-60 (1988), an EAJA case, that "deference was owed to the `judicial actor . . . better positioned than another to decide the issue in question.'" 496 U.S. at 403 (citation omitted). Furthermore, as with EAJA determinations, "[t]he issues involved in determining whether an attorney has violated Rule 11 likewise involve `fact-intensive, close

7

calls.'" *Id.* at 404.

The Court next discussed policy goals supporting a deferential standard of review, stating:

> Rule 11's policy goals also support adopting an abuse-of-discretion standard. The district court is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence. Deference to the determination of courts on the front lines of litigation will enhance these courts' ability to control the litigants before them. Such deference will streamline the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court; it will also discourage litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation.

*Id.*

### B.

All of the factors listed by the Supreme Court as supporting application of an abuse-of-discretion standard when a court of appeals reviews a district court's imposition of Rule 11 sanctions apply with equal force when a district court sits as an appellate court to review a bankruptcy court's imposition of Rule 9011 sanctions. The distinction is between trial court and appellate court functions. The bankruptcy court judge is on the "front lines of [bankruptcy] litigation" and is clearly the "judicial actor . . . better positioned than another to decide the issue in question." *Cooter & Gell*, 496 U.S. at 403-04. The determinations required to support the imposition of sanctions under Rule 9011 are the same as those required under Rule 11. They are fact-specific and almost invariably require assessments of credibility. Finally, the same policy goals that favor review by courts of appeals of Rule 11 sanctions orders under an abuse-of-discretion standard apply equally when a district court, sitting as an

8

appellate court, reviews Rule 9011 sanctions orders.

This court anticipated the Supreme Court's *Cooter & Gell* decision in several cases decided before 1990. In *Adamson v. Bowen*, 855 F.2d 668 (10th Cir. 1988), the court specifically rejected the appellant's argument that the district court should have reviewed the imposition of Rule 11 sanctions under a *de novo* standard. *Id.* at 673. Following its then recent decision in *Burkhart v. Kinsley Bank*, 852 F.2d 512, 515 (10th Cir. 1988), the *Adamson* court held that an abuse-of-discretion standard applies "across the board to all Rule 11 issues." 855 F.2d at 673; see also *Eisenberg v. University of New Mexico*, 936 F.2d 1131, 1132 (10th Cir. 1991) (same).

*Cooter & Gell* concerned the precise question whether different standards of review should apply to the different aspects of a Rule 11 decision. The forceful reasoning of the Supreme Court in concluding that an abuse-of-discretion standard applies to all aspects of the determination compels the conclusion that a district court should apply the same standard across the board when reviewing a bankruptcy court's Rule 9011 decision. Only by applying an abuse-of-discretion standard can the district court in this situation properly function as an appellate court.

## IV.

In reviewing the order of the bankruptcy court, the appellate court applies the same standard of review as the district court--in this case involving Rule 9011, an abuse-of-discretion standard. See *In re Blehm Land & Cattle Co.*, 859 F.2d 137, 138 (10th Cir. 1988). Applying the correct standard of review, we have no hesitation in holding that the bankruptcy

court did not abuse its discretion in finding that Findlay violated Rule 9011 in the *Cascade Energy* proceedings.

The Supreme Court stated in *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533 (1991), that "[t]he heart of Rule 11 is sentence [5], which explains in detail the message conveyed by the signing of the document." *Id.* at 542. The fifth sentence of Rule 11 is identical in its operative language with the third sentence of Rule 9011. The third sentence of Rule 9011 states:

> The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.

Findlay represented himself in his appeal to this court. At oral argument Findlay admitted that he had not read the entire statute [Cal. Code Civ. Proc. § 697.410] before he relied on it. He admitted, as well, that Rule 9011 requires him to know what the statute says. These admissions negate any claim that he formed a belief after reasonable inquiry that his reliance on § 697.410 was well grounded in fact or warranted by existing law. The first and most fundamental step in making the required inquiry must be to know what a statute relied upon actually says. This is particularly true when the reference to the statute in the signed paper shows on its face that words have been omitted. Recognizing that any omission has the potential to change the meaning of quoted material, a careful attorney will read the statute in its entirety to be certain that the omissions have not had that effect.

10

In this case, omission of the deleted language completely changed the meaning of the statute. Section 697.410 provides relief to a property owner whose real estate has been subjected to a judgment lien erroneously "because the name of the property owner is the same as or similar to that of the judgment debtor." Even a cursory reading of the entire statute would have disclosed to Findlay that it did not apply to the judgment lien in question. There was no confusion about the identity of the judgment debtor based on a similarity of names. Findlay's client demonstrably was not a person for whose benefit § 697.410 was enacted.

Findlay's mistatement of the statute's title was as egregious as removing "the guts" of § 697.410. As with the text, Findlay again omitted the limiting language from the title, including only that portion of the title which appeared to give the statute a more general application. Actually, however, the title, as well as the text, limits the statute's applicability to release of liens where the property owner is erroneously identified. The bankruptcy court judge had more than ample basis for concluding that the omissions in the title and the text of § 697.410 were intended to mislead the court.

Findlay argues that he should not have been sanctioned because opposing counsel had 80 days to inform the court of his contention that the statute was misquoted but did not do so until just before the hearing. This argument shows a fundamental lack of understanding of Rule 11 and Rule 9011. As this court stated in *Eisenberg v. University of New Mexico*, 936 F.2d 1131, 1134 (10th Cir. 1991):

11

The focus of Rule 11 is narrow. It relates to the time of signing of a document and imposes an affirmative duty on each attorney and each party, represented or pro se, to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed.

A case with factual similarities to the present one is *Thornton v. Wahl*, 787 F.2d 1151 (7th Cir.), *cert. denied*, 479 U.S. 851 (1986). In *Thornton*, an attorney misrepresented the meaning of an Illinois statute. In affirming a Rule 11 sanction, the court stated:

Rule 11 requires counsel to study the law before representing its contents to a federal court. An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating. Counsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorneys' fees under the Rule.

*Id.* at 1154 (citation omitted).

The amount of the sanctions is not contested. The bankruptcy court clearly did not abuse its discretion, on this record, by imposing sanctions, both for Findlay's signing and filing the original motion and memorandum, and for his continued insistence that § 697.410 supported his motion in his signed motion for rehearing with its supporting memorandum. The judgment of the district court is **REVERSED** and the decision of the bankruptcy court imposing sanctions pursuant to Rule 9011 is reinstated.