103 F.3d 472
 37 Collier Bankr.Cas.2d 207, 36 Fed.R.Serv.3d 874,
Bankr. L. Rep. P 77,219
 In re Joseph Patrick DOWNS; Helen B. Downs, Debtors.
MAPOTHER & MAPOTHER, P.S.C.; Charles M. Friedman,
Plaintiffs-Appellants/Cross-Appellees
(94-5867/5909)/Plaintiffs-Appellees (94-5910),
v.
Kyle COOPER, Defendant-Appellee/Cross-Appellant
(94-5867/5909)/Defendant (94-5910),
Southern American Insurance Company in Liquidation,
Defendant (94-5867/5909)/ Defendant-Appellant (94-5910).
 Nos. 94-5867, 94-5909 and 94-5910.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 29, 1996.
Decided Dec. 19, 1996.
 
 Joseph Patrick Downs, Bardstown, KY, pro se.
 Helen B. Downs, Bardstown, KY, pro se.
 Charles M. Friedman (argued and briefed), Mapother & Mapother, Louisville, KY, for Plaintiffs-Appellants, Cross-Appellees.
 Kathryn H. Hogan (argued and briefed), Greene and Cooper, Louisville, KY, for Kyle Cooper.
 Cathy S. Pike (argued and briefed), Goldberg & Simpson, Louisville, KY, for Southern American Ins. Co. in Liquidation.
 Before: NATHANIEL B. JONES, Senior Circuit Judge, and ALAN E. NORRIS and MOORE, Circuit Judges.
 NATHANIEL R. JONES, Senior Circuit Judge.
 
 
 1
 This is a bankruptcy case. During the course of Chapter 11 proceedings, the bankruptcy court imposed sanctions against the debtors' attorney, Charles Friedman, and his firm, Mapother and Mapother ("Mapother"), for failure to disclose Friedman's fee arrangement in accordance with the Bankruptcy Code and Rules of Bankruptcy Procedure. The bankruptcy court further denied the motion of the trustee and Southern American Insurance Company ("SAIC") to sanction Friedman under Federal Rule of Bankruptcy Procedure 9011 for filing a motion to convert the debtors' petition to a Chapter 11 petition. The district court affirmed the bankruptcy court in all respects. We affirm in part and reverse in part the decision of the district court.
 
 I.
 
 2
 This case has a long and intricate history, so we will recite only the facts pertinent to the immediate appeals. Hardscrabble Farms, Inc., a dairy farm owned by debtor Joseph P. Downs, filed a Chapter 11 reorganization petition in 1986, listing approximately $3.3 million of indebtedness. In an attempt to reorganize, Hardscrabble entered into a loan with SAIC. Mr. Downs eventually defaulted on the loan payments, causing the fiduciary relationship between Hardscrabble and SAIC to fall apart.
 
 
 3
 After the attempt to reorganize Hardscrabble failed, Downs and his wife, Helen P. Downs, filed a Chapter 7 bankruptcy liquidation petition on July 17, 1990. The Downses' petition listed 100% stock ownership in Hardscrabble, valued at zero, as an asset. The petition also listed as an asset the Downses' pending lender liability suit against SAIC in Nelson County Circuit Court. Hardscrabble Farms, Inc., et al. v. Southern American Ins. Co., Case No. 89-0608l(A) (Nelson County Kentucky Circuit Court filed July 25, 1989). Attorney August Klapheke represented the Downses in the Chapter 11 proceedings. The Downses pledged full ownership of the Hardscrabble stock to Klapheke as consideration for his services. Despite the fact that he held a security interest in the stock, Klapheke proceeded to solicit bids for purchase of the stock. Eventually, an entity known as P & Y submitted a bid. After learning of Klapheke's interest, however, the bid was withdrawn. Thereafter, SAIC offered to purchase the stock in settlement of the Downses' state court claim. The Trustee filed motions in the bankruptcy court to determine the status of Klapheke's security interest in the stock, to sell the stock, and to settle Downses' claims against SAIC.
 
 
 4
 In April 1991, Klapheke became incapacitated by what was later discovered to be a brain tumor. As a result, the president of Heaven Hill, Inc., a creditor of the Downses and Hardscrabble Farms, contacted Friedman and asked him to replace Klapheke as the Downses' counsel. Friedman agreed, and Mr. Downs paid Friedman a $40,000 retainer. Mr. Downs had received this money from Bourbon-Aid Feed, a company owned by his children. Bourbon-Aid, however, had acquired the money from Heaven Hill.
 
 
 5
 On June 17, 1991, Friedman entered an appearance on behalf of the Downses at the hearing on the Trustee's settlement motions. At the hearing, Friedman moved to convert the Chapter 7 case to a Chapter 11 reorganization case pursuant to 11 U.S.C. § 706, and posted a $16,500 appeal bond with the bankruptcy court. In August 1991, Friedman received an additional $6,000 from Bourbon-Aid Feed.
 
 
 6
 On August 20, 1991, the bankruptcy court granted the Trustee's settlement motion. Furthermore, the bankruptcy court denied the Downses' motion to convert, reasoning that reorganization was impossible. In so doing, the bankruptcy court concluded that the Downses' motion was filed in bad faith, in light of the fact that the debtors' bankruptcy had been pending for over one year and the motion to convert was filed on the "very eve, on the very day, almost a moment before the trustee was going to consummate a sale that the Court had been contemplating and working with for over six months." J.A. at 175 (Transcript of Hearing of 8/20/91). The court also noted that the motion was filed "solely for the purpose of delaying the sale." Id. The Downses appealed, and the district court reversed and remanded the case to the bankruptcy court to determine "[w]hether the Downs[es] can propose a viable reorganization plan and have the ability to proceed under Chapter 11...." J.A. at 351. In addition, the district court ordered that the Downses and/or Friedman be sanctioned if it appeared that their motion was in bad faith and there was no viable Chapter 11 plan.
 
 
 7
 On remand, the bankruptcy court held a four-day evidentiary hearing. In a June 3, 1992, Memorandum Opinion, the bankruptcy court found that "from the evidence concerning the financial condition of the Downs [sic] and [Hardscrabble] and Mr. Downs' admission that no plan had been reviewed, evaluated, or formulated until well after the initial conversion motion was filed, that the motion to convert this case to Chapter 11 was filed in objective bad faith and that on this ground the motion to convert should be denied." J.A. at 217. Furthermore, the bankruptcy court directed the Downses and Friedman to disclose all information relating to the retainer. Id. at 218. Accordingly, Friedman filed a statement with the bankruptcy court on June 11, 1992, wherein he disclosed his fee arrangement with Heaven Hill and Bourbon-Aid Feed. J.A. at 856-59.
 
 
 8
 On August 28, 1992, SAIC filed a Motion for Sanctions, pursuant to Rule 9011 of the Rules of Bankruptcy Procedure, against the Downses and Friedman on grounds that the § 706 Motion was filed in bad faith. The Trustee subsequently joined SAIC's Motion, alleging that 1) Friedman had failed to disclose his fee arrangement with Heaven Hill under Bankruptcy Rule § 2016, and 2) Friedman had failed to disclose a potential conflict of interest arising out of his Chapter 7 representation of the Downses in violation of 11 U.S.C. § 101(14). Friedman responded with 1) a Motion for Sanctions against the Trustee for failure to notify the Downses of offers of settlement in relation to the stock, and 2) a Motion for Sanctions against SAIC's attorneys for improperly filing the original Motion for Sanctions.
 
 
 9
 On March 23, 1993, the bankruptcy court denied in part and granted in part SAIC and the Trustee's Motion against Friedman and denied Friedman's Motion outright. The court reasoned that Rule 9011 sanctions would not be appropriate with regard to the filing of the § 706 Motion because 1) given the time constraints, Friedman adequately reviewed the case before he made the filing, and 2) the Motion was not filed in subjective bad faith. J.A. at 1656. On the other hand, the court granted the Motion with regard to Friedman's failure to disclose the fee arrangement. Accordingly, the court ordered Friedman and his firm to disgorge the entire retainer, minus the appeal bond and reimbursable expenses. As a further "sanction," it held that "no allowance for professional fees shall be granted by this Court to Friedman or his firm under 11 U.S.C. § 330." Id. at 1661. Both parties moved for reconsideration; consequently, the bankruptcy court issued a revised opinion wherein it affirmed its earlier decision on the Rule 9011 sanctions, but amended the earlier order by reducing the amount of the § 329 sanction to $20,000 and rescinding its bar on § 330 fees. Friedman appealed to the district court on the § 329 ruling, while SAIC and Cooper cross-appealed on the Rule 9011 issue. In a 7-page Memorandum Opinion, the district court affirmed. These appeals followed.
 
 
 10
 The issues to be addressed on appeal are: 1) whether the bankruptcy court properly imposed sanctions on Friedman and Mapother for Friedman's failure to comply with § 329 and Rule 2016; 2) whether the bankruptcy court properly reduced the amount of those sanctions so as to allow Friedman and Mapother to retain a portion of the retainer; and 3) whether the bankruptcy court properly denied SAIC and the Trustee's motion for sanctions under Rule 11. We will address each issue in turn.[1]
 
 II.
 
 11
 The applicable standard of review for a decision of a district court concerning a bankruptcy is dependent on whether such decision involves a question of law or fact. In this case, a de novo independent review is appropriate to review the district court's interpretation and application of 11 U.S.C. § 329(a) and Bankruptcy Rules 2016(b), See In re Caldwell, 851 F.2d 852, 857 (6th Cir.1988), and the factual findings regarding the parties' actions are reviewed under the clearly erroneous standard. See Archer v. Macomb County Bank, 853 F.2d 497, 499 (6th Cir.1988).
 
 
 12
 We will consider Friedman's appeal first. He argues that the district court erred in upholding the bankruptcy court's Amended Order requiring him to remit $20,000 of the funds received by him. We disagree.
 
 Section 329 provides:
 
 13
 (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
 
 
 14
 (b) If such compensation exceeds the reasonable value of any such service, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to--
 
 
 15
 (1) the estate, if the property transferred--
 
 
 16
 (A) would have been the property of the estate; or
 
 
 17
 (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
 
 
 18
 (2) the entity that made such payment.
 
 
 19
 Under this provision, then, an attorney must disclose any fee arrangements made within or after a year of the filing of the petition. Id.
 
 Rule 2016 states, in pertinent part:
 
 20
 (b) DISCLOSURE OF COMPENSATION PAID OR PROMISED TO ATTORNEY FOR DEBTOR. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code ... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.
 
 
 21
 It is clear from the record that Friedman violated both § 329(a) and Rule 2016. The Chapter 7 filing occurred on July 7, 1990. Consequently, under § 329, the Downses' attorney was bound to disclose any fee arrangements made after July 7, 1989. Friedman's fees, however, were received in May 1991, one year and 10 months after the Downses' petition was filed. Thus, the statute applies to Friedman; the fact that he was not counsel on the date of the filing is not relevant to the statutory application. Furthermore, with respect to the fifteen day requirement of Rule 2016, Friedman failed to disclose as required by the statute within the time frame mandated by the Rule. Thus, Friedman's arguments to the contrary are without merit.
 
 
 22
 In light of Friedman's conduct, we believe that the bankruptcy court properly exercised its authority in issuing sanctions against Friedman and Mapother. Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct. In re Rainbow Magazine, Inc., 77 F.3d 278, 283-4 (9th Cir.1996). It follows that the bankruptcy court is vested with the inherent power to sanction attorneys for breaches of fiduciary obligations. See In re Arlan's Dep't Stores, Inc., 615 F.2d 925, 943 (2d Cir.1979). Accordingly, "a failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid." In re Chapel Gate Apartments, Ltd., 64 B.R. 569, 575 (Bankr.N.D.Tex.1986); see also In re Land, 116 B.R. 798, 806 (D.Colo.1990) (citing In re Kero-Sun, Inc., 58 B.R. 770, 777-81 (Bankr.D.Conn.1986)), aff'd, 943 F.2d 1265 (10th Cir.1991).
 
 
 23
 Friedman, however, argues that the sanction was inappropriate because 1) the sums paid to Friedman were not property of the estate and therefore not subject to sanctions under § 329, and 2) § 329 allows remittance of unreasonable fees but does not mandate forfeiture of fees paid. This argument fails on both grounds. Retainers paid to counsel for the debtor are to be held in trust for the debtor, and the debtor's equitable interest in the trust is property of the estate. See In re Rittenhouse, 76 B.R. 610, 612 (Bankr.S.D.Ohio 1987); In re Tri-County Water Ass'n Inc., 91 B.R. 547, 551 (Bankr.D.S.D.1988); In re Leff, 88 B.R. 105, 108 (Bankr.N.D.Tex.1988). As a consequence, "any attorney who unilaterally withdraws against a retainer while representing a debtor in bankruptcy proceedings is plainly in violation of the strictures of the Code." Chapel Gate, 64 B.R. at 575. Furthermore, Friedman's argument that § 329 is not a forfeiture statute is misguided. The bankruptcy court issued sanctions under § 329(a); as a result, Friedman's argument, which relies on § 329(b), is misplaced. J.A. at 1749-50. Having been presented no salient arguments against the bankruptcy court's issuance of sanctions, we affirm the bankruptcy court's decision in that regard.
 
 III.
 
 24
 We next consider the argument proffered by the Trustee and SAIC that the district court erred in affirming the bankruptcy court's amended Order reducing the amount of sanctions against Friedman. They argue that a complete disgorgement and denial of fees was warranted because Friedman intentionally concealed his fee arrangement for over a year, and also because his dual representation of the Downses in a Chapter 7 proceeding and Hardscrabble in a Chapter 11 proceeding constituted a conflict of interest. Because the bankruptcy court is given a great deal of latitude in fashioning an appropriate sanction, see Chapel Gate, 64 B.R. at 574, the bankruptcy court's sanction of Friedman and Mapother should not be disturbed unless a clear abuse of discretion is found. Arlan's Dep't Stores, 615 F.2d at 943 (citing Dickinson Industrial Site v. Cowan, 309 U.S. 382, 389, 60 S.Ct. 595, 599, 84 L.Ed. 819 (1940)).
 
 
 25
 When a court metes out a sanction, it must exercise such power with restraint and discretion. Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123, 2132-33, 115 L.Ed.2d 27 (1991). The sanction levied must thus be commensurate with the egregiousness of the conduct. In cases involving an attorney's failure to disclose his fee arrangement under § 329 or Rule 2016, however, the courts have consistently denied all fees. In re Futuronics Corp., 655 F.2d 463 (2d Cir.1981); In re Arlan's Department Stores, Inc., 615 F.2d 925 (2d Cir.1979); In re Fricker, 131 B.R. 932, 939 (Bankr.E.D.Pa.1991); Crimson Investments, 109 B.R. 397; In re Kero-Sun, Inc., 58 B.R. 770 (Bankr.D.Conn.1986).
 
 
 26
 We find two of the aforementioned cases to be particularly persuasive. First, in the Futuronics case, the law firm of Arutt, Nachonie, and Benjamin ("Arutt firm"), counsel for a Chapter 11 debtor, sought the assistance of the Israel & Raley law firm ("Israel firm") in negotiating a contract dispute with the government. 655 F.2d at 466. The Israel firm was appointed special counsel by the bankruptcy court in 1975, and thereafter settled the dispute in January 1979. Id. After the settlement was approved in February 1979, the Israel firm requested compensation. The new bankruptcy judge, however, refused to award fees until the Israel firm submitted disclosures under former Bankruptcy Rule 219--the rule from which Rule 2016 is derived. Id. at 467. The Israel firm's Rule 219 affidavit revealed that it had paid $60,000--approximately one-third of the fees it received--to the Arutt firm in relation to the contract dispute. Id. This arrangement was not revealed to the previous bankruptcy judge, and it was not disclosed to the new judge when the Israel firm repeatedly moved for interim advances under the guise of financial hardship. Id. at 468. In light of this disclosure, Futuronics' new counsel (the Arutt firm had withdrawn from the case in 1977) then moved for a denial of all fees to the Israel and Arutt firms under Rule 219(d) (now 11 U.S.C. § 504). The bankruptcy court found that the firms had violated the disclosure requirements of Rule 219 and Rule 215, but ordered that the Arutt firm return only their respective portions of interim advances received. Id. at 468. The district court, however, reversed the bankruptcy court and denied fees altogether, reasoning that the firms had flagrantly violated the Bankruptcy Rules and that their pleas of ignorance were disingenuous. Id.
 
 
 27
 The Second Circuit affirmed the district court. The court found that although Rule 219, which had superseded the mandatory sanction provision of 11 U.S.C. § 102(d) (1976), was discretionary, "the principal purpose for the revision of the rule was not to dilute its underlying policy but to make additional discretionary sanctions...." 655 F.2d at 470 (emphasis added). Accordingly, in examining the conduct of the firms on the whole, the court concluded:
 
 
 28
 Whatever discretion a bankruptcy court judge may have to fashion an appropriate sanction for an attorney's violation of the bankruptcy rules and breaches of his fiduciary obligation to the court, given the egregiousness of the conduct here, it was an abuse of that discretion to permit the [firms] to retain any of the fees they had received, let alone to allow any further compensation.
 
 
 29
 Id. at 471.
 
 
 30
 The second case we cite with favor is Crimson Investments, a case which is more directly on point here. In that case, the attorney for the debtor entered into a fee arrangement to represent the debtor in Chapter 11 proceedings. The arrangement provided for a pre-petition payment and a post-petition payment, which together would constitute the attorney's retainer. The attorney's Rule 2016 affidavit stated that neither he nor his firm had any connection with the debtor, its creditors, or any other parties in interest. The court then held a hearing to ascertain the source of the attorney's retainer. It was only after the hearing that an officer for the debtor revealed that the retainer was to be paid by two of the debtor's largest unsecured creditors, both of whom happened to be controlled by the sole shareholder of the debtor. After that disclosure, the attorney withdrew from the case, but requested fees and costs. The bankruptcy court not only ordered the attorney to disgorge the retainer, but also denied his firm legal fees. 109 B.R. at 403. The court concluded that "by receiving compensation from Debtor's creditors, Debtor's Counsel had, and has, a pecuniary interest materially adverse to the interest of the secured creditor and the interests of the estate--a conflict of interest that requires a denial of all compensation to Debtor's Counsel." Id. at 402 (citations omitted). Specifically, it rejected the attorney's request for fees because "[t]he vast majority of the services rendered ... constituted [the firm's] defense of an untenable position." Id. Thus, "[a] failure to disclose forthrightly to the court and all creditors and interested parties all of the disclosures required under ... Section 329 and Bankruptcy Rule 2016 is hardly a position to be defended." Id.
 
 
 31
 The Futuronics and Crimson Investments cases each stand for the proposition that the bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016. The authority to do so is inherent, and in the face of such infractions should be wielded forcefully.
 
 
 32
 In light of this precedent, we conclude that a complete denial of fees is the only appropriate sanction in the instant case. We are not faced with a simple "technical breach" of § 329 and Rule 2016 here. Futuronics, 655 F.2d at 471. Friedman acted affirmatively to conceal his fee arrangement with Heaven Hill and Bourbon-Aid during the § 2004 examinations of his clients and during the evidentiary hearings on remand. Friedman further refused to extricate himself from a patently obvious conflict of interest by continuing to make appearances on Hardscrabble's behalf in state court while representing the Downses in bankruptcy court. He also misled the trustee and SAIC regarding his withdrawal from the state proceedings. Only at the last possible instance, under pain of court order, did Friedman disclose the source of his retainer. Such conduct by its very essence constitutes a willful disregard of the fiduciary duties imposed by statute.
 
 
 33
 In reducing the amount of sanctions, however, the bankruptcy court relied on a 16-factor test set forth in In re Omega Trust, 110 B.R. 665 (Bankr.S.D.N.Y.1990). J.A. at 1751. After applying this test, the bankruptcy court concluded that "its original award was too harsh." Id. While we recognize the court's duty to fashion a sanction that is not unduly burdensome, we also believe that the bankruptcy court erred in reducing the sanction here. Section 329 and Rule 2016 are fundamentally rooted in the fiduciary relationship between attorneys and the courts. Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts. Friedman, by his conduct in these proceedings, demonstrated a "callous disregard" for those duties. Under these circumstances, we believe that the bankruptcy court abused its discretion in allowing Friedman and Mapother to retain any fees. Futuronics, 655 F.2d at 471. For these reasons, we reverse the district court's decision with regard to the amount of sanctions imposed.
 
 IV.
 
 34
 Finally, we consider the Trustee and SAIC's cross-appeal with regard to the bankruptcy court's denial of Rule 9011 sanctions. At the outset, we must determine the standard of review to be applied. On its face, Rule 9011 closely tracks Federal Rule of Civil Procedure 11[2] ; consequently, the sister circuits have reviewed such cases for an abuse of discretion. In re Cascade Energy & Metals Corp. (hereinafter Cascade Energy), 87 F.3d 1146 (10th Cir.1996) (Lively, J.); Matter of Cohoes Indus. Terminal, Inc., 931 F.2d 222, 227 (2d Cir.1991); In re Grantham Bros., 922 F.2d 1438, 1441 (9th Cir.), cert. denied, 502 U.S. 826, 112 S.Ct. 94, 116 L.Ed.2d 66 (1991). We hereby adopt the same standard.[3] "An abuse of discretion occurs only when the district court 'relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.' " United States v. Hart, 70 F.3d 854, 859 (6th Cir.1995) (quoting Fleischut v. Nixon Detroit Diesel, Inc., 859 F.2d 26, 30 (6th Cir.1988)), cert. denied, --- U.S. ----, 116 S.Ct. 1368, 134 L.Ed.2d 534 (1996).
 
 
 35
 SAIC contends that Friedman should have been sanctioned under Rule 9011 for filing a motion to convert the Downses' Chapter 11 petition to Chapter 7 petition. Generally, an attorney is subject to Rule 9011 sanctions if, after the movant makes a reasonable inquiry prior to filing, the motion was not well grounded in fact or warranted by existing law or a good faith argument for the extension or modification, or reversal of existing law. Fed. R. Bankr.P. 9011(a); In re Marino, 37 F.3d 1354, 1358 (9th Cir.1994). Here, SAIC argues that: 1) Friedman made no reasonable inquiry before filing the motion; 2) the motion was not well grounded in existing law because the Downses had no reasonable possibility of reorganizing under Chapter 11; and 3) Friedman filed the motion for the express purpose of delaying the Hardscrabble stock sale. We disagree. As the bankruptcy court noted, Friedman was retained as counsel for the Downses on short notice, and had a limited period of time in which to research the facts of the case. J.A. at 1656. Consequently, he decided to exercise the Downses' right to convert under § 706(a). Under these circumstances, we find that Friedman's motion met the requirements of Rule 9011.
 
 
 36
 Similarly, both SAIC and the trustee contend that the bankruptcy court's finding of "objective bad faith" on the part of Friedman required the imposition of Rule 9011 sanctions. This argument is misguided. As with Rule 11, the test for imposing Rule 9011 sanctions is whether the individual's conduct was reasonable under the circumstances. See Hartleip v. McNeilab, Inc., 83 F.3d 767, 778 (6th Cir.1996) (which addresses, among other issues, the proper time to impose Rule 11 sanctions). In applying this test, the bankruptcy court "is not to use the benefit of hindsight but 'should test the signer's conduct by inquiring what was reasonable to believe at the time the ... motion ... was submitted.' " McGhee v. Sanilac County, 934 F.2d 89, 93 (6th Cir.1991) (quoting INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc., 815 F.2d 391, 401 (6th Cir.), cert. denied, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987)) (inner quotation omitted). In reviewing the bankruptcy court's decision, we find that it properly applied this test. After finding that Friedman's conduct was reasonable given the limited period of time he had to file the motion, the bankruptcy court properly concluded that "[a]lthough a later Judicial review of the facts proved Friedman's actions were unreasonable, at the time they were carried out in a genuine, if misguided, attempt to reorganize the debtor." J.A. at 1657. Therefore, we reject the Trustee and SAIC's attempt to use a retroactive finding of bad faith to impose Rule 9011 sanctions on Friedman. In light of the foregoing, we conclude that the bankruptcy court did not abuse its discretion in refusing to impose Rule 9011 sanctions on Friedman.
 
 V.
 
 37
 In summary, we find that Friedman violated § 329 and Rule 2016. We further find that the bankruptcy court erred by refusing to compel Friedman and Mapother to disgorge their retainer in toto. Finally, we find that the bankruptcy court did not abuse its discretion in refusing to sanction Friedman under Rule 9011. For these reasons, we AFFIRM the decision of the district court with regard to the sanctions under § 329 and Rule 2016, and its refusal to issue Rule 9011 sanctions. However, we REVERSE the decision of the district court concerning the amount of the sanctions under § 329 and Rule 2016. Accordingly, we REMAND the case with instructions to order a disgorgement of all fees paid to Friedman and Mapother.
 
 
 
 [1]
 Because neither party has addressed the bankruptcy court's decision as it relates to § 330, we will not address it here
 
 
 [2]
 Rule 9011 reads in pertinent part:
 (a) Signature
 Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated.... The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed by reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or increase the cost of litigation. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.
 
 
 [3]
 In adopting the "abuse of discretion" standard for review of Rule 9011 cases, we find Cascade Energy particularly compelling. In that opinion, the Tenth Circuit held that the district court erred in reviewing the bankruptcy court's order imposing Rule 9011 sanctions de novo rather than for an abuse of discretion. 87 F.3d at 1149. Relying on the Supreme Court's decision in Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), the court reasoned that the factors listed by the Cooter & Gell Court in applying an "abuse of discretion" standard in Rule 11 sanctions cases are present in Rule 9011 cases. Writing for the court, Judge Lively explained:
 The bankruptcy court judge is on the "front lines of [bankruptcy] litigation" and is clearly the "judicial actor ... better positioned than another to decide the issue in question." Cooter & Gell, 496 U.S. at 403-04, 110 S.Ct. at 2459-60 ... The determinations required to support the imposition of sanctions under Rule 9011 are the same as those required under Rule 11. They are fact-specific and almost invariably require assessments of credibility. Finally, the same policy goals that favor review by courts of appeals of Rule 11 sanctions orders under an abuse-of-discretion standard apply equally when a district court, sitting as an appellate court, reviews Rule 9011 sanctions orders.... The forceful reasoning of the Supreme Court in concluding that an abuse-of-discretion standard applies to all aspects of the determination compels the conclusion that a district court should apply the same standard across the board when reviewing a bankruptcy court's Rule 9011 decision. Only by applying an abuse of discretion standard can the district court properly function as an appellate court.
 Cascade Energy, 87 F.3d at 1150.
 The Ninth Circuit, however, endorsed a tripartite standard of review in In re Taylor, 884 F.2d 478, 480 (9th Cir.1989). The Taylor court held that "factual findings relied upon by the court to establish a violation of the rule are reviewed under the clearly erroneous standard, the legal conclusion that the facts constitute a violation of the rule is reviewed de novo, and the appropriateness of the sanction is reviewed for an abuse of discretion." Id. Nonetheless, in recent cases the Ninth Circuit has applied a pure abuse of discretion standard in Rule 9011 cases. In re Rainbow Magazine, 77 F.3d at 283 (citing Air Separation, Inc. v. Underwriters at Lloyd's of London, 45 F.3d 288, 291 (9th Cir.1995)); In re Grantham Bros., 922 F.2d at 1441.