**In re TRIPLE S RESTAURANTS, INC.**

**Donald M. Heavrin, Plaintiff,**

v.

**J. Baxter Schilling, Defendant.**

**J. Baxter Schilling, Plaintiff,**

v.

**Robert E. Harrod, Defendant.**

**J. Baxter Schilling, Plaintiff,**

v.

**Robert E. Harrod, et al., Defendants.**

**Civil Action Nos. 3:03CV–217–H, 3:03CV–396–H, 3:03CV–546–H.**

**Adversary Nos. 96–3128, 96–3129.**

United States District Court,
W.D. Kentucky,
at Louisville.

Feb. 25, 2004.

Donald M. Heavrin, Heavrin & Associates, Louisville, KY, Pro se.

James A. Earhart, Louisville, KY, for Appellant/Defendant.

J. Baxter Schilling, Louisville, KY, Pro se.

David Marcus Cantor, Seiller & Handmaker, Joseph S. Elder, II, Rob Eggert, Scott C. Cox, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

This Memorandum Opinion concerns three separate appeals arising out of Triple S Restaurants, Inc. ("TSR") bankruptcy. Each of these appeals is related. Some of the issues raised in each are the same, others are distinct. In addition, the Court is considering another related case on remand from the Sixth Circuit, *United States of America v. Donald M. Heavrin,* 144 F.Supp.2d 769 (W.D.Ky.2001). Contemporaneously, the Court is issuing an opinion in that case and makes reference to it here.

In these appeals the Court will consider the following issues in turn: (1) whether the Bankruptcy Court erred by determining that the payment of $252,000 of insurance proceeds from Jackson National Insurance Company ("Jackson National") to the Harrod Irrevocable Trust (the "Trust") was void; (2) whether the Bankruptcy Court erred by requiring Donald Heavrin ("Heavrin") and Bobbie Bridges ("Bridges") to reimburse the TSR bankruptcy estate for the full amount of the insurance proceeds which they received; (3) whether the Bankruptcy Court erred by requiring Heavrin to disgorge attorney's fees that TSR paid to him within one year of its bankruptcy; and (4) whether Judge David Stosberg erred by not recusing himself from these cases.

The general circumstances of these cases are well known to everyone. The Court will proceed with its analysis drawing on such parts of the evidence as is necessary.

### I.

The first two issues are related and concern whether the Bankruptcy Court erred in ordering Heavrin and Bridges to reimburse the TSR estate for $252,000 which they received from the Harrod Trust. The Bankruptcy Court found that Heavrin's conduct amounted to actual fraud. This Court disagrees. For reasons quite different than those set out by the Bankruptcy Court, however, this Court concludes that its result is correct.

Section 548 of the Bankruptcy Code, 11 U.S.C. § 548, empowers a trustee in bankruptcy to avoid fraudulent transfers. The trustee may set aside transfers infected by actual fraud. Certain other transactions categorized as constructively fraudulent transfers are also subject to those same powers. The constructive fraud provision permits avoidance where the trustee can establish (1) that the debtor had an interest in property; (2) that a transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) that the debtor received "less than a reasonable equivalent value in exchange for such transfer." 11 U.S.C. § 548(a)(2)(A); *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). In our circumstances, the Trustee meets all of these requirements.

### A.

■ One could make reasonable arguments about whether a fully assigned insurance policy remains property of a bankrupt estate. This is the critical issue

concerning the avoidance of the transaction.

Prior to June 17, 1994, TSR had an interest in the Jackson National policy (the "Policy"), even though it had executed a collateral assignment of the Policy to McDonald Douglas Finance Corporation ("MDFC"). Foremost, it was the legal owner of the Policy. TSR retained the right to any proceeds remaining after satisfaction of the MDFC debt. Its ownership had little actual value other than that the Policy would ultimately reduce TSR's debt to MDFC. Its interest as owner may have been a legal formality, but an interest nonetheless. Its interest in the Policy proceeds to offset the debt of MDFC was quite real and apparent. Its reverter interest, in the circumstance that the Policy proceeds exceeded TSR's indebtedness to MDFC, appeared to have almost no actual value as to the circumstances in June, 1994. Though its value may have been questionable, the interest as a matter of law cannot be ignored. Under 11 U.S.C. § 541(a)(5)(c), the Court finds that the Harrod Policy did constitute an interest in property of TSR as of June 17, 1994. TSR did retain an interest in the Harrod Policy.

TSR did transfer the Policy to the Harrod Trust within a year TSR filed its bankruptcy petition. The term "insolvent" is defined at 11 U.S.C. § 101(26) to mean, generally stated, that the sum of one's debts is greater than the value of his property in a fair evaluation. Even though actual bankruptcy filing was still several months away, no one would seem to dispute that even in June TSR's debts greatly exceeded its assets. TSR appears to have been insolvent at the time of the transfer. Thus, the second element is established.

■ The last remaining question is whether the debtor received a reasonable equivalent value in exchange for the transfer. This question is made somewhat easier due to the fact that TSR received no consideration for the transfer of the Policy. Previously this Court has said that the reverter interest had almost no value. In June, 1994, this certainly seemed the case. The Court should look at all the circumstances when determining whether TSR received reasonable value in exchange for such a transfer. Two events unrelated to TSR's transfer convince the Court that the absence of any consideration cannot be deemed reasonable or equitable under the whole circumstances.

As a result of the transfer, TSR lost something—MDFC eventually claimed only $1,750,000 rather than $2,000,000 as a setoff on its secured debt; and Heavrin gained something—the apparent opportunity and leverage to negotiate a $252,000 settlement with MDFC. Under those circumstances, the transfer created value for Heavrin and caused a determent to TSR. In return, for providing this value and undertaking a determent, TSR received no consideration. The Court concludes that the Trustee has satisfied all the requirements of constructive fraud under Section 548(a)(2)(A).

### B.

■ The Bankruptcy Code empowers the Court to employ equitable remedies to recover the value of property avoided under Section 548 from any person who is the immediate or mediate transferee of the original transferee. 11 U.S.C. § 550(a). Heavrin and Bridges fit precisely that definition as each was the immediate transferee from the Harrod Trust.

The evidence is completely confusing as to why MDFC would settle with Heavrin and agree to Jackson National paying $252,000 from the proceeds of the policy directly to the Harrod Trust. What cannot be seriously disputed is that the Har-

rod Trust did obtain those proceeds directly from Jackson National which otherwise would have reduced MDFC's unsecured claim against the TSR estate. Neither the Harrod Trust nor Heavrin can be faulted for MDFC limiting its setoff to $1,750,000 rather than $2,000,000. As a matter of equity, however, it cannot be disputed that the Harrod Trust benefitted and the creditors of TSR were harmed by this result. Consequently, both as a matter of law and equity, the Court concludes that it is proper to require repayment of the Policy proceeds from Heavrin and Bridges to the TSR estate.[1]

## II.

■ The Court must next determine whether the Bankruptcy Court erred in determining that Heavrin must disgorge approximately $46,000 in attorney's fees which he received from TSR within one year of the bankruptcy petition. This issue has been the subject of some difference of opinion between the bankruptcy and district courts. The Bankruptcy Court believes that because TSR reported the fees as insider payments and because Heavrin did not independently report the fees, these payments within the year prior to the bankruptcy should be disgorged. After reviewing this matter in its entirety, the Court concludes that it is best to start its analysis from scratch. This is necessary because numerous mistakes and misconceptions seem to have invested the arguments on this issue. The Court does not excuse itself from this indictment. The basic and original assertion here is that Heavrin must be required to disgorge all his fees because he did not disclose those fees as required by 11 U.S.C. § 329.

The Court now believes that the entire premise of this assertion is incorrect.

Section 329 requires "any attorney representing a debtor in a case under this title, or in connection with such a case" must file a statement of compensation received from the debtor within the year preceding filing of the petition. Heavrin was counsel for TSR prior to bankruptcy. He was not counsel for the debtor TSR. As yet the Court has not seen evidence that Heavrin represented the debtor while in bankruptcy. By its terms § 329 applies only to attorneys for the debtor and does not apply to counsel generally who provided services for a corporation prior to bankruptcy. The Court cannot find a single case in which a court applied the § 329 obligations to pre-petition counsel. Now reading the provision, the words seem so clear that the Court is uncertain how one could state a view so confidently to the contrary.

It does not seem to this Court that Heavrin should be sanctioned for Mr. Chinn's failure to disclose fees which TSR paid to Heavrin. The duty to disclose such fees and other disbursements bound Chinn, TSR and perhaps corporate officers, not Heavrin. Moreover, the payments were not concealed. Chinn disclosed the fees in the petition as payment to a related person.

The Court has previously conducted a perhaps overly thorough analysis of *In Re Downs*, 103 F.3d 472 (6th Cir.1996). In that case, Mr. Friedman replaced the original counsel for the debtor, Downs. Friedman represented Downs in the on-going bankruptcy proceedings. Thus, § 329

---

1. The Court disagrees with the Bankruptcy Court's finding of actual fraud. *See U.S. v. Heavrin*, 144 F.Supp.2d 769 (W.D.Ky.2001). The evidence before the Bankruptcy Court appears similar to that which this Court con-

sidered in the criminal trial. The standard of proof, of course, is much different. Moreover, the elements necessary are different. The Court need not review the Bankruptcy Court's determination of actual fraud.

clearly applied to him. This Court's analysis of *Downs* appears correct except for the assumption that the § 329 disclosure requirements bound Heavrin. Not being an attorney for the debtor, Heavrin is in a different position than Friedman. To that extent this Court has been in error.

A few other comments are in order. This Court did not intend to determine that Heavrin's services for the year preceding the bankruptcy were "in connection with the bankruptcy." Heavrin performed substantial services for TSR prior to its petition. That Heavrin was probably aware that TSR was in danger of a bankruptcy is quite irrelevant to the Court's analysis.

The thrust of the Trustee's argument seems to be that Heavrin was paid more than he deserved to receive. No one seems to disagree that Heavrin engaged in an arrangement for a $10,000 monthly retainer from TSR and that he performed a substantial amount of work. If this amounted to a preferential payment or a fraudulent transfer, the Trustee could have advanced such a claim. He did not make either such claim. Instead, the Trustee sought disgorgement based on Heavrin's failure to comply with his duty to report fees under § 329. Absent a duty that the statute would impose if Heavrin was an attorney for the debtor, the Trustee cannot maintain a claim of disgorgement under § 329.

### III.

■ Finally, the Court must determine whether the Bankruptcy Court erred in denying Heavrin's motion that Judge Stosberg be recused from this case. Heavrin argues that Judge Stosberg should have recused himself, mostly on the grounds of comments and rulings which the judge made during the course of the litigation. The Court disagrees.

This litigation has been hotly contested. In the course of it, Judge Stosberg has made numerous decisions which required that he assess Mr. Heavrin's truthfulness and motivation. That he made those decisions adversely to Heavrin, does not require Judge Stosberg to recuse himself. The Court agrees with Judge Stosberg's handling of the recusal motion and concludes that his denial of that motion is supported by the law and sufficient facts of record. The Court finds no basis for concluding that Judge Stosberg erred or abused his discretion in denying the motion.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

The Court has considered numerous issues on appeal in these three cases. The Court has issued a Memorandum Opinion discussing those issues. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Bankruptcy Court's order determining that the payment of $252,000 of insurance proceeds from Jackson National Insurance Company to the Harrod Irrevocable Trust to be void is AFFIRMED.

IT IS FURTHER ORDERED that the Bankruptcy Court's order requiring Donald Heavrin and Bobbie Bridges to reimburse the TSR Trustee in the amount of $252,000 for the proceeds of insurance policy received is AFFIRMED.

IT IS FURTHER ORDERED that the Bankruptcy Court's order requiring Donald Heavrin to disgorge attorney's fees in the amount of $46,000 received from TSR is REVERSED.

IT IS FURTHER ORDERED that the Bankruptcy Court's order denying Donald

Heavrin's motion that Judge Stosberg recuse himself is AFFIRMED.

This is a final and appealable order.