**In re William D. CAMPBELL, Debtor.**

No. 94–14704.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 22, 2001.

---

Sheldon Stein, Cleveland, for William D. Campbell.

Dean Wyman, Office of the U.S. Trustee, Cleveland, for the United States Trustee.

Joanne Brown, Virgil Brown, Jr., Cleveland, for Joanne Brown.

## MEMORANDUM OF OPINION

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

This attorney fee dispute arises out of Chapter 13 Debtor William Campbell's attempts to refinance his home mortgage loan after confirmation of his plan of reor-

ganization and while his case was still pending. The United States Trustee filed a motion to review fees paid post-confirmation by the Debtor to Attorney Joanne Brown, to cancel the fee agreement between them, and to order a refund of fees. The Debtor joins in the motion. The movants contend that Ms. Brown received $700 in fees in connection with the attempted refinancing without a court order or adequate disclosure and that she is improperly attempting to collect an additional $800 through a state court lawsuit. (Docket 65, 68, 82).

Ms. Brown responds with several points. With respect to some of the fees, she claims that she did not need court authority because they were not for legal services at all or, if they were for legal services, they were not for services connected to the bankruptcy case. With respect to others, Ms. Brown alleges that she did make adequate disclosure. Finally, in the event that her position is not accepted, she disputes the amount of fees paid and argues that disgorgement is too severe a sanction. (Docket 81).

The Court held an evidentiary hearing on January 16 and 17, 2001. For the reasons stated below, the Court finds that all fees were for legal services related to the bankruptcy, that Ms. Brown did not adequately disclose the fees, and that disgorgement is the appropriate remedy.

### JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1334 and General Order No. 84 entered on July 16, 1984 by the United States District Court for the Northern District of Ohio. This dispute is a core proceeding under 28 U.S.C. § 157(b)(2) because it arises in a bankruptcy case and involves the application of Title 11 and the Bankruptcy Rules. *See Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1144 (6th Cir.1991) (citations omitted) (determining that core proceedings

include proceedings arising under title 11 and proceedings arising in title 11 cases and noting that "[t]he phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11 ... and 'arising in' proceedings are those that, by their very nature, could arise only in bankruptcy cases."). *See also In re Bressman*, 214 B.R. 131, 132 (Bankr. D.N.J.1997) ("Issues relating to the debtor's retention and compensation of bankruptcy counsel pursuant to §§ 328, 329, 330 and 331 of the Bankruptcy Code are 'core' proceedings as defined by Congress in 28 U.S.C. § 157."); *In re Telemaintenance, Inc.,* 157 B.R. 352, 354 (Bankr. N.D.Ohio 1993) (review of attorney compensation under § 329 is a core proceeding under 28 U.S.C. § 157(b)(2)(A)).

### FACTS

The parties agree about very little in this case, from the underlying facts to the applicable law. This recitation of the facts reflects the Court's findings of fact after considering all of the evidence. In weighing the evidence and determining the credibility of the witnesses, the Court considered the witness' demeanor, the substance of the testimony, and the context in which the statements were made. FED. R. BANKR. P. 7052, incorporating FED. R. CIV. P. 52; FED. R. BANKR. P. 9014.

### A. Background

At the time the Debtor filed his Chapter 13 case, he owed money on a note to First Nationwide Mortgage Corporation, which note was secured by a mortgage on the Debtor's house. The Debtor's Chapter 13 plan required him to make regular monthly payments to First Nationwide and additionally to make monthly payments to the Chapter 13 Trustee to satisfy pre-petition obligations. The order confirming the plan also included these provisions:

1. The order is a standard form that has been required for use in this division for several

1. Alan Silver, then counsel to the Debtor, was authorized to receive $600 in fees for his services;

2. The Debtor was prohibited from incurring additional debt exceeding $500 in the aggregate without Court approval; and

3. The Debtor was prohibited from transferring any interest in real property without Court approval.

(Docket 22).[1]

Like many others in similar situations, the Debtor later sought to refinance his existing home mortgage loan with a new lender to consolidate his debts. He intended to use the new loan proceeds to pay in full the balances due on the First Nationwide loan and the Chapter 13 plan (and receive his Chapter 13 discharge earlier than he otherwise would) with the hope that his one new monthly payment would be less than the existing payments. To accomplish this, the Debtor, through Mr. Silver, filed a motion to approve a new loan with AMRESCO Residential Mortgage Corporation, as he was required to do under the confirmation order before incurring significant new debt or transferring real estate.

After a hearing, the Court granted the motion as amended. The order giving the Debtor authority to enter into this transaction was entered on August 20, 1997, but the loan never closed. (Docket 34, 36, 37, 40).

This is the point where the dispute between the Debtor and Ms. Brown begins.

### B. The Relationship between the Debtor and Ms. Brown created in September 1997

The next month, the Debtor approached attorney Virgil Brown, Jr. for legal assistance in connection with the hoped-for refinancing. The Debtor testified that he

years.

sought new counsel because Mr. Silver had not completed the paperwork to close the AMRESCO loan. Because the Debtor still wanted to refinance his house, he had applied for a different loan with American Business Credit. He wanted an attorney to handle the legal work with respect to this alternative refinancing so that he could obtain his Chapter 13 discharge.

Mr. Brown was not available and referred the Debtor to Ms. Brown, his law associate. The Debtor gave Ms. Brown paperwork from American Business Credit and a statement relating to the Chapter 13 case. At that first meeting, the Debtor signed a document titled "Attorney Client Agreement" (the "Agreement"). The parties disagree as to the relationship they entered into at that time, with the Debtor believing that he had hired an attorney in his Chapter 13 case and Ms. Brown denying an attorney-client relationship.

The Agreement states in part:

I, William Campbel [sic]... request of, Joanne Brown ... hereinafter called Attorney, that she advise and represent and prepared [sic] any necessary and incidental documents regarding *acquiring buy-out amount for mortgage loan on residential home and amount of buy-out on Chapter 13 plan to assist in ending the plan.* And any and all thing [sic] necessary or incidental to the above activity. In return I agree to pay Attorney an hourly fee of 00.00 or a flat estimated fee of *$750.00.* This fee is to be paid as follows: *$300.00 down* . . . .

(UST Exh. 4; emphasis in original).[2] Ms. Brown did not file a fee application or Bankruptcy Rule 2016 fee disclosure in connection with this Agreement.

Ms. Brown denied that the Debtor hired her under the Agreement to perform legal services. Instead, she testified that the Debtor only wanted her to find out how much money he owed to certain creditors whose names appeared on a list that he gave her, some of whom were included in the Chapter 13 plan and some of whom were not. Although she told him that he did not need an attorney to get that information, he persisted and so she agreed to help him with what she characterized as ministerial acts outside of the bankruptcy case, rather than legal acts in connection with the Chapter 13.

In a letter to the Cleveland Bar Association Grievance Committee, however, Ms. Brown stated in part that "Mr. Campbell has obtained *my services as an attorney* on three separate occasions. [The first was] September 16, 1997 at a fee of $750 . . . ." (Brown Exh. 3) (emphasis added).[3] Beyond that, on November 10, 1997, Ms. Brown filed a Notice of Appearance in the Chapter 13 case in which she stated that "Attorney Joanne Brown ... has been retained as Attorney for William D. Campbell in the above captioned proceedings. Copies of all further communications, pleadings, court notices, and other papers should be served upon the undersigned as Attorney of Record." (Docket 42). Ms. Brown testified that she only entered this appearance because the Debtor asked her to get and forward to him copies of documents filed in his case, and not because she was going to represent him in the Chapter 13. The Court did not find this explanation convincing.

After considering all of the evidence, the Court finds the Debtor's testimony on this point to be credible and concludes that Ms. Brown did agree in September 1997 to act as the Debtor's lawyer in connection with the Chapter 13 case.

### C. *How many other agreements did Ms. Brown and the Debtor enter into?*

Ms. Brown testified that she entered into a total of four written agreements

---

2. The Debtor has adopted all of the United States Trustee's exhibits.

3. The Court notes that the flat fee of $750 is an amount that many Chapter 13 counsel charge a debtor for handling a routine Chapter 13 case.

with the Debtor from September 1997 forward, while the Debtor testified that he only entered into the Agreement and one additional oral agreement. The issue is relevant because Ms. Brown contends that some of the fees she received from the Debtor related to non-bankruptcy work under separate written agreements.

Normally, the question of how many agreements a lawyer entered into with a client would be easy to answer by reference to the lawyer's file and the written agreements. The easy answer is not available in this case because Ms. Brown acknowledges that she lost the Debtor's file in connection with office remodeling upheaval and she does not have copies of the agreements.

Resolving this point again requires weighing the evidence and considering conflicting testimony. Ms. Brown testified she entered into a second written agreement with the Debtor for legal services relating to a traffic ticket on November 5, 1997 for a flat fee of $100 (the "Second Agreement"). The Debtor denied this, and testified that he did consult Ms. Brown about a traffic ticket, but in the context of needing car insurance which Virgil Brown Insurance then sold to him. The Court finds that there is insufficient evidence to establish that the parties entered into the Second Agreement or what the terms of the agreement might have been.

The parties agree that they met again in about June 1998. The American Business Credit transaction had not yet closed (for reasons not established by the evidence) and the Debtor still wanted to go forward. Ms. Brown testified that she and the Debtor entered into a third and fourth written agreement on June 22, 1998. According to her testimony, the third agreement related to the Chapter 13 case and provided that the Debtor would pay her an additional $800 fee for the refinancing work (the "Third Agreement"). The Debtor acknowledged that he agreed to pay this amount, but only from the proceeds of the

new loan as part of the closing. He also denied having signed a Third Agreement to that effect. Having considered the competing versions of what went on, the Court concludes that while the Debtor and Ms. Brown did enter into another agreement at that time with respect to the Debtor's Chapter 13 case, there is insufficient evidence to prove what the terms of that Third Agreement were, including whether the Debtor unconditionally promised to pay an additional $800 or whether the payment was only to be made out of the loan proceeds.

The remaining question is whether the Debtor and Ms. Brown entered into a fourth agreement, also dated June 22, 1998, relating to a matter other than the bankruptcy case (the "Fourth Agreement"). Ms. Brown testified that this Fourth Agreement, calling for yet another $800 payment, was for another type of loan, but she did not provide details about it. She did offer into evidence a cognovit promissory note (the "Note") signed by the Debtor, with a typed date of June 22, 1998, in which he promised to repay $800 within 30 days with interest at 8% per year from the date on which the Note was executed. (Brown Exh. 1; ¶ 2). The Note further stated that if any installment was not paid when due there would be an additional $25 late charge for each month the payment was due and unpaid. Ms. Brown acknowledged that the Debtor did not borrow any money from her. She testified that she actually had him sign the Note to emphasize the importance of the attorney-client agreement.

As noted, Ms. Brown did not explain what this non-bankruptcy matter was and there is no file to support it. The Court also returns to the correspondence from Ms. Brown to the Cleveland Bar Association in which she stated that:

Mr. Campbell has obtained my services as an attorney on three separate occasions. September 16, 1997, at a fee of $750, November 5, 1997 at a fee of $100 and *June 22, 1998 at a fee of $800.* On

each of those occasions he signed the attorney client agreements, include [sic] with this document . . . .

(Brown Exh. 3) (emphasis added).[4] Ms. Brown testified that she did not refer to the Fourth Agreement in this letter because it was not the subject of the Association's inquiry. Regardless, the Court finds that if there had, in fact, been a Fourth Agreement entered into on that same date, it is more likely than not that Ms. Brown would have referred to it in this letter. Finally, the Debtor denied having entered into a Fourth Agreement or having agreed to pay an additional $800 in fees for a non-bankruptcy matter. On review of all of the evidence, the Court finds that there is insufficient evidence to prove that the Debtor and Ms. Brown entered into a Fourth Agreement or what the terms of that agreement might have been.

In sum, the evidence established that the Debtor and Ms. Brown entered into the Agreement in September 1997 under which the Debtor agreed to pay her $750 to serve as his lawyer in the Chapter 13. The evidence also established that they entered into the Third Agreement in June 1998 relating to the Chapter 13, although there was insufficient evidence to prove the terms of that agreement.

### D. How much did the Debtor pay to Ms. Brown under the Agreement?

The question of how much the Debtor actually paid to Ms. Brown under the Agreement would, again, ordinarily be easy to answer by reference to the attorney's accounting records, including ledger books and bills. Those documents were, however, also lost.

The testimony again conflicted. Ms. Brown testified that the Debtor paid between $400 and $450 of the $750 due under the Agreement, with any other payments

being attributable to one of the other three alleged agreements. The Debtor testified that he paid $700 of the $750.

The UST introduced into evidence several receipts which shed some light on this issue (UST Exh. 5):

| Date | What the Receipt Says |
|------|----------------------|
| 9/16/97 | Credit 125; balance 625 |

The date and these amounts are consistent with $125 having been paid against the $750, leaving a balance of $625.

| 9/18/97 | Paid 175; retainer payment |

Again, the date and amount are consistent with $175 having been paid against the $625 balance, leaving a new balance of $450.

| 10/28/97 | 300 balance |

This receipt, more likely than not, shows that the Debtor paid an additional $150, leaving a new balance of $300.

| 11/5/97 | Credit 100; balance 50 |

There are no receipts for payments made between October 28, 1997 and November 5, 1997, but it is more likely than not that the Debtor did make a $150 payment in that time period, leaving a $150 new balance, especially because there is a note on Exhibit 5 that says "Amount due $150." Starting with that $150 balance and crediting a $100 payment on November 5, 1997 leaves a new balance of $50 on the original $750, as reflected on this receipt.

In sum, the Court concludes based on all of the evidence that the Debtor paid $700 of the $750 called for by the Agreement.[5]

### E. The Return to the Bankruptcy Court in June 1998

Starting on June 22,1998, Ms. Brown filed a Motion, an Amended Motion, and a Second Amended Motion seeking authority for the Debtor to borrow money from

---

4. The copy of this document introduced by Ms. Brown into evidence did not have attachments.

5. The Debtor suggested that Ms. Brown also received legal fees paid through the Chapter 13 Trustee's office. Ms. Brown denied receiving any such funds and there was insufficient evidence to prove receipt of additional funds.

American Business Credit (again to consolidate his debts and pay off the Chapter 13 plan) and setting a hearing date of July 14, 1998. (Docket 44, 45, 46). The filings did not comply with Administrative Order 98–1,[6] which specifies the information that must be included in a motion to incur new debt. The hearing was adjourned by the Court to give the Debtor the opportunity to comply and a new hearing was set for August 11, 1998. (Docket entry 7/14/98).

Within the time allotted, the Debtor filed two supplemental documents. (Docket 49, 50). The hearing went forward, the Court granted the motion in part, and an order to that effect was entered on August 28, 1998 (the "Order"). (Docket 52).

### F. Ms. Brown Demands Payment of $1,600 in Legal Fees

On September 2, 1998, Ms. Brown sent the Debtor a letter telling him that she had received a copy of the Order and that he would be getting a copy as well (presumably from the Court, although it is not clear why Ms. Brown did not send a copy to him). She then stated:

> This fulfills my obligation as outlined in the Attorney Client Agreement dated June 22, 1998. Please forward, by September 8, 1998, to my office a check for $1,600.00, (One Thousand Six Hundred Dollars and No Cents) representing payment of legal fees for drafting and filing motions, attending hearings on motions, negotiations with American Business Credit, and Tower City Title, obtaining amount needed to pay-off loan to First Nationwide Mortgage and the Chapter 13 Trustee.

**6.** Northern District of Ohio General and Administrative Orders, together with the undersigned's standing orders and memoranda, are on the court's web site at www.ohnb.uscourts.gov. and are available in the Clerk's office.

**7.** One year before this letter would have been September 1997, which further supports the conclusion that Ms. Brown agreed in Septem-

(UST Exh. 7). She followed this up with a letter dated September 4, 1998 stating:

> ... This process has taken over almost a year[7] and it [sic] my understanding that your loan which was to close on August 28, 1998, base [sic] on the information I provided to you, Jeff and Tower City Title, was canceled, because of your lack of cooperation ... As I indicated in my letter of September 2, 1998, I am requesting payment of legal fees by September 8, 1998. If payment is not receive [sic] by that date I will have no choice but to seek other recourse to enforce my rights ....

(UST Exh. 8). At the hearing, Ms. Brown did not offer a credible explanation for how she arrived at the conclusion that the Debtor owed $1,600 in legal fees. Although she suggested that the $1,600 was for more than the work described in the letter, she did not provide evidence of the work she performed using the lodestar standard.[8]

In the absence of time records, the Court has considered the description in the above correspondence of the work performed, consisting of obtaining pay-off numbers, drafting motions, appearing in court, and negotiating with the lender and title company. The pay-off amount from the Chapter 13 Trustee is typically obtained through a letter to that office. Obtaining a pay-off number from a mortgage loan holder may take slightly longer, but it is generally not a time-consuming task. Preparing an application for authority to refinance is straightforward in that Administrative Order 98–1 advises counsel what needs to be included. If that information is contained in the original filing, then only

ber 1997 to serve as the Debtor's attorney in connection with the refinancing.

**8.** The lodestar calculation generally requires multiplying the reasonable number of professional hours expended by the reasonable hourly rate for those services. *Boddy v. United States Bankruptcy Court, Western District of Kentucky (In re Boddy)*, 950 F.2d 334 (6th Cir.1991).

one filing and hearing are generally needed. Ms. Brown did not testify about the referenced negotiations with the lender and title company, but debtors usually have little leverage in refinancings and there are few issues to negotiate. Based on the Court's assessment of the work done here, and having reviewed countless applications for similar work under the lodestar standard, the Court finds that typically it would involve about 2 to 3 hours of work at a rate in the range of $150 an hour and that a reasonable fee would be no more than that.

### G. Ms. Brown Sues the Debtor in State Court

When the Debtor did not pay, Ms. Brown sued him in state court. The record is not clear as to what happened to the original complaint, but in September 2000 Ms. Brown filed an Amended Complaint. In that Amended Complaint, Ms. Brown sued on the Note, alleging that:

> The note was given for the following business purpose: Legal fees associated with obtaining information and securing court permission to seek a business loan
> . . . .

(UST Exh. 9). She demanded judgment for $800 plus interest at 8% from July 22, 1998 and costs. That lawsuit is pending.

Ms. Brown testified that the Amended Complaint is inaccurate, but she did not clarify what cause of action she hoped to pursue. The argument may have been that the lawsuit should be permitted to proceed because it is unrelated to bankruptcy work. To the extent that this is the argument, the Court finds that the Amended Complaint is not unrelated to the Chapter 13, but is instead an effort to collect additional fees for bankruptcy legal work as discussed above. The additional or alternative argument that Ms. Brown may have been making is that the fees do relate to the Chapter 13 under the Third Agreement, that she appropriately disclosed them, and that the Order authorized her to

collect them. That argument is discussed further below.

### H. Ms. Brown's Knowledge of the Code, Rules, and Orders relating to compensation of professionals in Chapter 13 cases

Ms. Brown, who has been a member of the Ohio Bar since about 1978, testified that she has been in active practice for approximately 8 of the years from that date to the present, having taken time off at various points for family reasons. She has handled several bankruptcy matters, including representing debtors in cases under Chapter 7 and 13 and serving as counsel to Mr. Brown in his capacity as a Chapter 7 Trustee. Ms. Brown was not, however, able to estimate the number of bankruptcy matters that she has handled and did not provide details of her bankruptcy work.

Until this motion was filed about six months ago, Ms. Brown was not familiar with Bankruptcy Rule 2016 "Compensation for Services Rendered and Reimbursement of Expenses" or Bankruptcy Code § 329 "Debtor's Transactions with Attorneys." She had filed statements that complied with Rule 2016 in other cases, but only when she was the lawyer filing the case. She contended that counsel is not required to file the same Rule 2016 statement when counsel enters a case after it has been filed, but that the requirement is, in effect, somewhat relaxed.

With respect to Bankruptcy Code § 330 "Compensation of Officers," Ms. Brown testified that she was more familiar with it at the time of the hearing than she had been before, but she did not know how long she had been familiar with it. Ms. Brown was not aware of Administrative Order 93–1 "Amended and Restated Order Governing Procedure for Allowance of Attorneys Fees in Chapter 13 cases" until this motion was filed. She was not generally aware that attorneys are prohibited from receiving fees in respect of a bankruptcy case in this district after the case is

filed and while it is pending, absent court order. Similarly, Ms. Brown did not recall whether she had read Administrative Order 98–1, governing motions to incur new debt, including refinancing, before she filed the motion to approve the loan.[9]

### THE RELIEF SOUGHT AND THE RESPONSE

The Debtor and the UST ask that the Agreement be cancelled, that Ms. Brown be ordered to return the monies paid by the Debtor, and that she be enjoined from collecting any further amounts. Ms. Brown asks that she be found entitled to the money already paid and permitted to proceed with the state court lawsuit.

### DISCUSSION

#### A. Disclosure of Compensation Required

■ Bankruptcy Code § 329 requires a debtor's attorney to make certain disclosures regarding compensation:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). This section was enacted because "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny."

H.R.Rep. No. 95–595, at 329 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6285. See also Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.), 210 B.R. 844, 848 (10th Cir. BAP 1997) ("The purpose of this process is to prevent overreaching by an attorney and provide protection for creditors."). An attorney who is retained to represent a debtor in a case after it has been filed is required to make a § 329 disclosure. Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 477 (6th Cir.1996).

Bankruptcy Rule 2016(b) implements § 329 and provides:

(b) Disclosure of Compensation Paid or Promised to Attorney for Debtor. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at any other time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity ... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

FED. R. BANKR. P. 2016(b). As with § 329, an attorney retained as debtor's counsel after a case is filed is required to meet the 15 day supplemental disclosure provisions of this rule. In re Downs, 103 F.3d at 477.

■ Disclosure is critical because it permits a court to review fee agreements and payments for reasonableness. If review shows that the compensation is not reasonable, the court may cancel the agreement or order a refund of payments made. 11 U.S.C. § 329(b). Bankruptcy

---

9. The Court admitted evidence at the hearing concerning another case in which Ms. Brown served as debtor's counsel, for the limited purpose of showing when Ms. Brown knew about the disclosure rules. (In re Broadnax, Case No. 98–50742, N.D. Ohio, Eastern Division at Akron). On further reflection, the Court concludes that the Broadnax evidence is not relevant even for the limited purpose for which it was admitted, and the Court has not given any weight to it in this Opinion.

Rule 2017 implements this provision. FED. R. BANKR. P. 2017. Taken together, § 329 and Rule 2017 "furnish the court with express power to review payments to attorneys for excessiveness and to restore the status quo when assets have improvidently been bartered for legal services[.]" *In re Martin,* 817 F.2d 175, 180 (1st Cir.1987).

 The required disclosure relates only to services rendered "in contemplation of or in connection with the case[.]" The scope of the phrase "in connection with the case" is broad. *In re Keller Fin. Servs. of Fla., Inc.,* 248 B.R. 859, 878–79 (Bankr.M.D.Fla.2000); *Cohn v. U.S. Trustee (In re Ostas),* 158 B.R. 312, 321 (N.D.N.Y.1993). "The phrase may include services related to the precipitating cause of the bankruptcy, or services which are inextricably intertwined with the bankruptcy." *In re Keller Fin. Servs. of Fla.,* 248 B.R. at 879. *See also In re Hargis,* 148 B.R. 19, 21 (Bankr.N.D.Tex.1991) (holding in the Chapter 11 context that services by an attorney which enhance, preserve, litigate, or discharge liabilities, or which affect assets of the debtor are services in connection with the case). The phrase is not so broad, however, that it includes every service rendered to a person who is a debtor. *See for example, In re Swartout,* 20 B.R. 102 (Bankr.S.D.Ohio 1982) (determining that services related to a debtor's divorce proceeding were not

connected to the bankruptcy case within the meaning of § 329).

 Ms. Brown argues that she was not required to disclose the Agreement or the fees paid because she did not agree to represent the Debtor in his Chapter 13 case in September 1997 and the services were not related to that case.[10] As found above, Ms. Brown did agree to represent the Debtor at that time in connection with the refinancing in an effort to get his Chapter 13 discharge. The debtor's right to obtain a discharge in exchange for meeting his or her obligations under the plan is the heart of a Chapter 13 case and services relating to that issue are clearly rendered in connection with the case, whether they are performed at the beginning of a case or mid-stream. Therefore, while some legal services performed for a debtor while a bankruptcy is pending may be so unrelated to the bankruptcy case that they fall outside the scope of § 329, services connected to obtaining a discharge are not such services. Consequently, the Bankruptcy Code and Rules required Ms. Brown to disclose the Agreement and payments received under it.

### B. *Failure to Disclose*

 Compliance with § 329 and Rule 2016 is "crucial to the administration and disposition of cases before the bankruptcy courts."[11] *In re Downs,* 103 F.3d at 480. Compliance is mandatory. "Coun-

---

**10.** In support of this argument, Ms. Brown cites cases which discuss bankruptcy jurisdiction as to related matters. See *Loomis Elec. Inc. v. Lucerne Prods., Inc.,* 225 B.R. 381 (N.D.Ohio 1998) (holding that a contractor's removed state court action against a debtor for amounts due was a related proceeding); *176–60 Union Turnpike, Inc. v. Howard Beach Fitness Center, Inc.,* 209 B.R. 307 (S.D.N.Y. 1997) (holding that a debtor's removed state court negligence claims were not related proceedings). These cases are factually different and are not relevant to the determination of whether Ms. Brown's services were rendered in connection with Mr. Campbell's case for purposes of § 329. Moreover, these cases are not relevant on the issue of jurisdiction, because (as previously discussed) this matter is

a core proceeding involving the administration of this bankruptcy case and is within this court's jurisdiction. See 28 U.S.C. §§ 1334 and 157(b)(2)(A).

**11.** The failure to comply with these disclosure requirements is especially significant in Chapter 13 and 7 cases. *See In re Bell,* 212 B.R. 654, 657 (Bankr.E.D.Cal.1997) (noting that the disclosure requirements are especially significant in a Chapter 13 case, because the court does not approve the employment of Chapter 13 counsel); *In re Saturley,* 131 B.R. 509, 517 (Bankr.D.Me.1991) (stating that transactions between Chapter 7 debtors and their counsel should be subject to particular scrutiny).

sel's fee revelations must be direct and comprehensive. Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient." *In re Saturley*, 131 B.R. 509, 517 (Bankr.D.Me.1991).

■■■■ "Section 329 and Rule 2016 are fundamentally rooted in the fiduciary relationship between attorneys and the courts." *In re Downs*, 103 F.3d at 480. Bankruptcy courts have the inherent power to sanction an attorney for a breach of this fiduciary obligation. *In re Downs*, 103 F.3d at 478. The "failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 880 (9th Cir. 1995). Sanctions may also be imposed for negligent or inadvertent failures to disclose. *In re Park–Helena Corp.*, 63 F.3d at 881.

■■■■ The $700 paid under the Agreement admittedly was not disclosed and the Court concluded above that it should have been. Ms. Brown argues that she did disclose an additional $850 fee that the Debtor allegedly agreed to pay in connection with the Third Agreement relating to the refinancing effort. For support, she relies on the supplement to the motion for authority to refinance, which was ultimately attached as an exhibit to the Order. Ms. Brown contends that this attachment established her right to receive additional fees and satisfied her disclosure obligations.

First, while the Court has found that there was a bankruptcy-related Third Agreement, the Court also found that there was insufficient evidence to show that the Debtor unconditionally agreed to pay an additional fee in connection with the refinancing and so the Debtor is not responsible to pay those funds regardless of disclosure. Even if he had so agreed, however, the documents filed by Ms. Brown did not provide appropriate disclosure of the Third Agreement. The supplement consists of several pages. Exhibit A to it, titled "Estimated Costs" has two lines for attorneys fees, both of which are marked "$.00." Exhibit C, "Settlement Charges," includes this line item: "Attorney Fee to Joanne Brown, Attorney." The amount of $850 then appears across from that line item under the column heading: "Paid From Borrower's Funds at Settlement."

■■■■ This information does not comply with the Code or the Rules, either in letter or spirit. The law requires that a disclosure be straightforward, whether the disclosure is made when the case is filed or at a later time. To meet that standard, a disclosure should include a clear reference to Rule 2016 and should address each of the elements of that Rule. Here, the "disclosure" is buried in another document, does not refer to Rule 2016, was not served on the United States Trustee, does not address whether Ms. Brown had agreed to share compensation, and is not separately signed by Ms. Brown.

The Court also notes that there are two inconsistencies between Ms. Brown's testimony and this exhibit: (1) the $850 amount in Exhibit C is inconsistent with her testimony that she had agreed to accept $800 for the additional refinancing work; and (2) the exhibit states that the fees are to be paid from the loan proceeds, while Ms. Brown's testimony was that the Debtor owed the fees even when the loan did not close.

The Court finds, based on all of the evidence, that Ms. Brown did not adequately disclose this additional fee, even if it were otherwise recoverable, which it is not.

**C.** ***Allowance and Payment of Attorney Fees in Chapter 13 cases***

■■■■ Debtors' counsel in Chapter 13 cases may be awarded reasonable compen-

## 628

sation for representing a Chapter 13 debtor, but may not be paid without court approval. Under § 330, "... the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B). Reasonable compensation is determined using a lodestar fee analysis. *In re Boddy*. In this division, Administrative Order No. 93–1 provides that:

> In accordance with the Bankruptcy Code and Rules no attorney may, directly or indirectly receive any fees in respect of a case after the case is filed and while it is pending except pursuant to order of the Court.

Administrative Order 93–1, ¶ 3.[12]

If Ms. Brown had followed the applicable law, she would have been eligible to receive fees for the legal work she performed on behalf of the Debtor. The situation, however, is that Ms. Brown first failed to disclose the Agreement under § 329 and Rule 2016(b) and then compounded the problem by receiving $700 in fees in violation of Administrative Order No. 93–1 and § 330 and suing the Debtor in an attempt to recover more fees.

### D. *The Appropriate Sanction*

■ The "'failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid.'" *In re Downs*, 103 F.3d at 477 (quoting *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 575 (Bankr.N.D.Tex.1986)). The

sanction imposed must "be commensurate with the egregiousness of the conduct" and will depend on the particular facts of the case. *In re Downs*, 103 F.3d at 478–480. If, however, the failure to disclose is willful, a bankruptcy court must deny all compensation. *In re Downs*, 103 F.3d at 479–80.

■ Ms. Brown argues that if she is found to have violated the rules, she did not do so intentionally and that disgorgement is too harsh a remedy. The United States Trustee requests disgorgement and the Debtor suggests that disgorgement should only be the starting point for the sanction.

In deciding what sanction is appropriate, the Court has considered the totality of the circumstances, including these points:

1. An attorney should disclose all bankruptcy-related fee agreements and fees paid, but Ms. Brown did not;

2. An attorney appearing in the bankruptcy court should be familiar with the Bankruptcy Code and Rules governing professional compensation, as well as with local orders, but Ms. Brown was not;

3. An attorney entering an appearance for a debtor after a case has been filed should review the case file either before or immediately after entering the appearance, but Ms. Brown did not. If Ms. Brown had timely reviewed this file, she would have had the benefit of seeing that Mr. Silver had applied for additional attorney fees and the standards used by the Court to consider that application.[13] She also would have seen that the confirmation order prohibited the Debtor from incurring additional debt greater than $500 without Court approval;

---

**12.** Administrative Order No. 93–1 was entered on January 11, 1993 and applies to all cases filed between that date and June 6, 1996. Subsequent Administrative Orders which apply to cases filed after June 6, 1996 include the same provision. See Administrative Orders 96–6, ¶ 5 and 98–4, ¶ 5.

**13.** In 1996, Mr. Silver applied for, and was granted, an additional $100 in fees, to be paid over 12 months through the plan. (Docket 28, 31). The order granting the application refers to the Bankruptcy Code and Rules, *In re Boddy*, 950 F.2d 334 (6th Cir.1991), General Order No. 93, and Administrative Order No. 93–1.

629

4. An attorney should maintain adequate records of the work she performs for a debtor, but Ms. Brown did not;

5. An attorney should maintain adequate records reflecting legal fees and filing fees paid by a debtor, but Ms. Brown did not; and

6. An attorney should have support for any fee demand made on a debtor, but Ms. Brown did not.

The Court believes that Ms. Brown acted negligently rather than intentionally in her failure to follow the appropriate procedures. The Court also believes it is entirely possible that the Debtor was not easy to deal with. Nevertheless, the Court concludes that the appropriate sanction is that the Agreement should be cancelled, all fees should be refunded to the Debtor, and no further fees should be collected.

## CONCLUSION

For the reasons stated, the fee agreements between the Debtor and Ms. Brown are cancelled, Ms. Brown is ordered to refund $700 to the Debtor, and she is enjoined from collecting further fees from him.