**In re Clayton J. HACKNEY and Linda L. Hackney, Debtors.**

No. 6:03–bk–02488–ABB.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

June 15, 2006.

Ezra R. Witsman, Howey In Hills, FL, for Debtors.

## ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Chapter 13 Trustee's Motion to Compel John V. Head, Attorney for Debtors, to Disgorge Fees Received On or About June 7, 2005 in the Amount of $10,000.00 ("Motion to Compel"), the John Vernon Head's Response to Trustee's Motion to Disgorge Fees Received on or About June 7, 2005 and Petition to Approve Payment of Fees,

and the Motion to Withdraw as Counsel by John V. Head.[1] An evidentiary hearing was held on March 7, 2006 at which the Chapter 13 Trustee, John V. Head, Esquire, the creditor George Randall Turner and his counsel appeared. The parties were provided seven days to submit additional documentation in support of their positions. They filed numerous pleadings, including objections, briefs, motions to strike, and an application for compensation.[2] The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### Representation of the Debtors

Clayton J. Hackney and Linda J. Hackney (collectively, the "Debtors") engaged attorney Ezra Witsman ("Witsman") as their Chapter 13 bankruptcy counsel. The Debtors and Witsman executed a Legal Fee Agreement dated March 10, 2003 setting forth the terms of Witsman's representation.[3] Witsman agreed to charge $175.00 per hour for his services pursuant to the Legal Fee Agreement. The Debt-

ors, with the assistance of Witsman, instituted this joint Chapter 13 case on March 10, 2003 (the "Petition Date") on an emergency basis. The Debtors' primary asset is their homestead located at 27451 Spring Valley, Road, Eustis, Florida 32736 (the "Property"), which is encumbered by a first priority mortgage held by George Randall Turner ("Turner"). The Debtors filed bankruptcy in an attempt to avoid a foreclosure sale of the Property by Turner.[4]

An Order Establishing Duties of Trustee and Debtor was issued by the Court on March 13, 2003.[5] Paragraph 7 of the Order provides: "Consistent with Fed. R. Bankr.P.2016(b), debtors' counsel must file supplemental disclosures for all payments received from the debtor after this case is filed. Failure to file the required disclosures may result in the disgorgement of fees paid." Witsman filed a Rule 2016(b) Statement on March 26, 2003 reflecting he agreed to accept $1,500.00 for services and received such amount from the Debtors.[6] No order was entered in this case granting Witsman additional fees nor did Witsman ever seek additional fees.

---

1. Doc. Nos. 205, 231, and 225.

2. The matters under consideration are: Motion to Compel John V. Head, Esquire, Attorney for Debtors, to Disgorge Fees Received on or about June 7, 2005 in the amount of $10,000 and Request for Hearing (Doc. No. 205); Response to Trustee's Motion to Disgorge Fees Received on or about June 7, 2005 (Doc. No. 231); Trustee's Objection to Petition to Approve Payment of Fees (Doc. No. 236); First Application for Compensation for Additional Bankruptcy Attorney's Fees and Costs for John Vernon Head, Debtor's Attorney (Doc. No. 237); Brief Posting Hearing regarding Trustee's Motion to Disgorge Fees (Doc. No. 238); Response to John Head's Post–Hearing Brief Regarding Trustee's Motion to Disgorge Fees Received on or about June 7, 2005 (Doc. No. 239); Motion to Strike

Response of Chapter 13 Trustee (Doc. No. 240); Response to Motion to Strike Response filed by *John v. Head* to Response of the Chapter 13 Trustee to Post–Hearing Brief (Doc. No. 241); Amended Motion to Strike (Doc. No. 242); and Motion to Withdraw (Doc. No. 225).

3. Doc. No. 231, Exh. 1.

4. Turner obtained from the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida a Final Judgment of Foreclosure against the Debtors in the amount of $142,000.00 on February 5, 2003. (*See* Doc. No. 5.)

5. Doc. No. 3.

6. Doc. No. 14.

Attorney John Vernon Head ("Counsel") purchased Witsman's law practice and substituted as counsel for the Debtors on our about August 12, 2003.[7] The Debtors did not execute a fee agreement with Counsel and Counsel did not file a Rule 2016(b) Statement disclosing the terms of his engagement. Counsel represented the Debtors in several matters during the pendency of their bankruptcy case, both in this Court and in other courts. He did not follow the terms of the Legal Fee Agreement and has not produced any fee agreements or evidence of communication to the Debtors regarding his billing arrangements.

Counsel asserts he billed the Debtors at the discounted "per hour rate of $175.00." [8] He contends the fees charged by him "were below the firm's published fee schedule ... as a substantial discount of the fees was given because the Hackneys are existing clients." [9] Counsel, as his own exhibits reflect, billed the Debtors at varying hourly rates—sometimes as much as $225.00 per hour.[10] He asserts he has received no fees or reimbursement of costs for his representation of the Debtors in their Chapter 13 case and has sent no billings to the Debtors during their three-year relationship.[11]

Counsel presented invoices for professional services relating to matters classified by him as "non-bankruptcy" matters.[12] The invoices are undated, contain no dates on which services were actually rendered, set forth only general descriptions of the services rendered, provide no delineation of how much time was spent on a particular task or who rendered the services, and, in some instances, there is no time delineation set forth at all. It is unclear whether Counsel sent the invoices to the Debtors. The Debtors paid Counsel $2,000.00,[13] which Counsel applied to matters he classifies as "non-bankruptcy" services.[14] Counsel has not established the Debtors' payment was for services unconnected to the bankruptcy case or application of the payments to "non-bankruptcy" matters was proper. Counsel had a statutory obligation to disclose his receipt of $2,000.00 to the Court and to the United States Trustee. He did not disclose receipt of the $2,000.00 and breached his disclosure duties.

### Plan and Claim Litigation

Turner and the Debtors have had a difficult relationship throughout this case and extensively litigated Turner's various proofs of claim, including Turner's Third Amended Proof of Claim (Claim No. 13). The litigation concluded with the entry of the Order Allowing George Randall Turner's Third Amended Proof of Claim fixing Turner's claim in the amount of $157,375.57 plus interest at the rate of 10% per annum on the principal amount of $142,000.00 (relating to the final judgment of foreclosure) from February 5, 2003 until paid in full.[15] Turner's allowed claim includes an award of $15,375.58 for attorneys' fees incurred by Turner: (i) $7,028.58 to Akerman Senterfitt; (ii)

---

7. Doc. No. 54 (Joint Motion for Substitution of Counsel); Doc. No. 58 (Order Substituting Attorneys).

8. Doc. No. 237 at ¶ 3.

9. Doc. No. 238 at ¶ 2.

10. Doc. No. 231, Exh. 6.

11. Doc. No. 231, Exhs. 1 & 2.

12. Doc. No. 231, Exhs. 3, 4, 5 & 6.

13. Doc. No. 231 at ¶ 7.

14. Id.

15. Doc. No. 136 (entered on June 4, 2004).

$1,947.00 to McLeod & McLeod, P.A.; and (iii) $6,400.00 to Becker & Poliakoff, P.A.[16]

The Debtors' plan confirmation process was litigious. Their Seconded Amended Plan [17] was confirmed on August 3, 2004 through the entry of the Order Confirming Chapter 13 Plan ("Confirmation Order").[18] The plan provided for the full payment of Turner's allowed claim by month 60 of the plan. The Confirmation Order and plan were later modified.[19] Counsel did not file a fee application or otherwise seek an award of attorney's fees during the plan confirmation process. Neither the Confirmation Order nor the subsequent orders relating to the confirmed plan award Counsel or Witsman fees.

A critical objective in the Debtors' case was the refinancing of the Property. The refinancing proceeds were to be used to pay off their plan obligations, including (and most important) Turner's claim, and allow them to emerge from Chapter 13. Counsel was extensively involved in the refinancing process. He arranged the refinancing of the Property and represented the Debtors throughout the refinancing process. His services in connection with the refinancing directly relate to the bankruptcy case and fees for those services are governed by the Bankruptcy Code and Rules.

Statewide Title Corporation ("STC") was the closing agent for the refinancing. The closing took place on May 28, 2005 at STC's offices. The Debtors were present for the closing, but Counsel was not. STC presented a payoff figure to the Debtors containing $10,000.00 for Counsel's fees.[20]

Counsel did not notify the Debtors he was seeking payment of $10,000.00 from the refinancing proceeds and never presented an invoice to them. No invoice or billing statement relating to attorney's fees claimed by Counsel was presented to the Debtors at the closing. The Debtors, stunned by the figure, telephoned Counsel's office for an explanation and spoke with Counsel's assistant Mary Mantey, who told Mrs. Hackney the fees were for work relating to the extensive litigation with Turner. Mrs. Hackney stated, "I was very shocked.... Clay and I had talked about giving extra to the firm upon closing but not the amount that John Head sent over to the Lender without my knowledge." [21]

The Debtors went forward with the closing understanding the closing proceeds were to be used only for bankruptcy related costs and fees. They understood their plan obligations, including Turner's allowed claim, would be paid in full through the refinancing. They did not understand the payment of fees to Counsel from the refinancing proceeds would cause a shortfall leaving Turner's allowed claim unsatisfied. STC prepared a HUD–1 Settlement Statement (the "HUD–1").

STC had not yet disbursed the closing proceeds as of June 7, 2005. Counsel, post-closing, delivered to STC an invoice addressed to "Clay & Linda Hackney" dated *April 8, 2005.*[22] The invoice was generated

---

**16.** Turner filed a Fourth Amended Proof of Claim (Claim No. 18) on June 18, 2004, which he subsequently withdrew.

**17.** Doc. No. 140.

**18.** Doc. No. 151.

**19.** Doc. No. 163 (Amended Order Confirming Chapter 13 Plan); Doc. No. 191 (Order Granting Motion to Modify Second Amended Confirmed Plan).

**20.** Doc. No. 236, Exh. A.

**21.** *Id.*

**22.** Doc. No. 205, Exh. A.

by Counsel from his billing software and is designated as "Invoice # 1." It sets forth "Attorney Fees" in the "Description" column and "10,000.00" in the "Rate" and "Amount" columns. The invoice provides no detail or disclosure of what services Counsel provided, the time period covered, the hours expended, his billing rate, or any basis for the $10,000.00 charge.

An "adjustment" was made to the HUD–1 Settlement Statement on June 7, 2005 reducing the Debtor's plan payoff amount by $10,000.00. The reduction resulted in Turner being paid the "adjusted" sum of $143,184.82, which was $10,000.00 less than Turner's allowed claim payoff amount. The disbursement made to Turner on June 7, 2005 was $10,000.00 less than the payoff sum reflected in the original HUD–1. Turner did not consent to a reduction of his payoff amount and his allowed claim was not paid in full through the refinancing. His allowed claim remains unsatisfied. STC disbursed $10,000.00 to Counsel from the refinancing proceeds by check number 27025 dated June 7, 2005.[23] Counsel accepted and negotiated the check issued by STC.

STC did not provide to anyone the amended HUD–1 Settlement Statement reflecting the amount actually disbursed to Turner or reflecting the $10,000.00 disbursement to Counsel. The original HUD–1 does not reflect the $10,000.00 disbursement. Counsel contends he was not involved with the preparation of the HUD–1, nor did he review it in advance of the closing. Counsel did not file an application for additional fees and costs nor a Rule 2016(b) Statement prior to receipt of the

$10,000.00. Counsel did not disclose to the Debtors, the Trustee, or the Court his receipt of $10,000.00 from the refinance proceeds.

### The Post-closing Events

The Debtors' main purpose in refinancing the Property was to payoff their Chapter 13 plan obligations, which include the allowed claim of Turner—their most significant creditor. Counsel's receipt of the $10,000.00 frustrated that purpose and has harmed the Debtors and Turner. His taking of the $10,000.00 from the refinancing proceeds caused a $10,000.00 shortfall that prevented the Debtors from paying off their plan obligations and emerging from bankruptcy. Turner's allowed claim was not paid in full at the closing and his claim remains unsatisfied, with interest accruing at the rate of 10%. Litigation has ensued as a direct result of Counsel's actions, consuming the resources of the Debtors, Turner, the Chapter 13 Trustee, and the Court.

Virtually every docket entry appearing from June 6, 2005 to the present relates to the payoff shortfall.[24] This case began to deteriorate on June 6, 2005 with the Trustee's motion to dismiss this case based on the Debtors' failure to maintain timely plan payments.[25] Counsel filed a Response on behalf of the Debtors asserting: "The Debtors have refinanced their mortgage with George Randall Turner (Claim No. 18) ... The Debtors have been delayed by the refusal of Mr. Turner to cooperate in the payoff of his debt required by this Court's Order confirming the current plan."[26] Counsel next filed an

---

23. Doc. No. 205, Exh B.

24. Seventy-three docket entries (Nos. 171–244) have been made from June 6, 2005 to the present.

25. Doc. No. 171.

26. Doc. No. 172 at ¶¶ 2, 5. Counsel's reference to Claim No. 18 is in error; Claim No. 18 was withdrawn by Turner. Claim No. 13 was ultimately allowed pursuant to the Court's Order of June 4, 2004.

Amended Motion to Modify Confirmed Chapter 13 [27] in which he states: "Debtors[ ] have paid the mortgage listed as Claim No. 18 to George Randall Turner and the arrearages listed as Claim Nos. 501, 502, 503, *in full,* per the hearing held on September 21, 2004." [28]

Counsel's statements in these pleadings are disingenuous. The refinancing had taken place, but Turner's allowed claim had not been paid in full due to the $10,000.00 shortfall caused by the disbursement to Counsel. There was no issue as to Turner's cooperation or STC having a correct payoff amount—Turner's claim had not been paid in full through the refinancing due to Counsel's actions. Turner had no knowledge Counsel had instructed STC to reduce Turner's payoff amount by $10,000.00.

The parties filed numerous additional pleadings, all relating to the payoff shortfall. Counsel did not disclose his receipt of the $10,000.00 in any filings made prior to March 7, 2006. Counsel did not file a Rule 2016 Statement nor did he file a fee application (he ultimately filed a fee application, but only *after* the March 7, 2006 hearing). The filings establish Counsel took affirmative steps to conceal his receipt of the funds. A pleading of particular significance is the Seconded Amended Motion to Modify Confirmed Chapter 13 Plan filed by Counsel.[29] Counsel reasserts Turner

was paid in "in full" and attaches a worksheet prepared by Counsel, or at his direction, that allegedly "reflects all payments, including payoff disbursements (see attached spreadsheet)." [30] The Payoff Worksheet manipulates the calculation of Turner's correct payoff amount and includes the item "Attorney's fees Payoff $8,999.00" with Turner's disbursement figure. There is no disclosure in this document of the $10,000.00 disbursement made to Counsel.

The Turner payoff dispute culminated with a lengthy hearing on March 7, 2006. Counsel, even then, was still not forthcoming about his receipt of the $10,000.00. Counsel informed the Court he had disclosed his receipt of fees in the Payoff Worksheet through the $8,999.00 line item listing. The Payoff Worksheet makes no disclosure of fees incurred or received by Counsel.

Counsel, in support of his contention he was entitled to the $10,000.00 disbursement, provided the Affidavit of Mary L. Mantey: "they [stated] they . . . would pay the firm $10,000 upon the refinancing of their property [31] . . . [they] restated they . . . *wanted* to pay the firm this $10,000 [32] . . . [they] again restated their *desire* to pay the firm this $10,000 [33] . . . [they] again restated their *desire* to pay the firm $10,000, upon the refinancing of their

---

27. Doc. No. 182.

28. *Id.* at ¶ 4 *(emphasis added). N.B.:* The Debtor's reference to Claim Nos. 501, 502, and 502 are not actual claim numbers or separate claims. These numbers refer to the attorneys' fee component of Turner's allowed claim (*see* Claim No. 13 and Order Allowing George Randall Turner's Third Amended Proof of Claim entered on June 4, 2004). The Trustee assigned such numbers to the attorneys' fee component of Turner's allowed claim for accounting purposes (*see* Exhibit A

prepared by the Trustee attached to the Amended Order Confirming Chapter 13 Plan (Doc. No. 163)).

29. Doc. No. 188.

30. *Id.* at ¶¶ 5, 8.

31. Doc. No. 231, Exh. 9, ¶ 7.

32. Doc. No. 231, Exh. 9, ¶ 8.

33. Doc. No. 231, Exh. 9, ¶ 9.

property."[34] Counsel notarized the Affidavit. Counsel has a conflict of interest with respect to the Affidavit: he is the affiant's employer (Ms. Mantey is his assistant) and a principal party to this proceeding. The Debtors were not given an opportunity to consent or object to a disbursement to Counsel, even if the Affidavit is truthful. The Debtors were not notified prior to closing Counsel was seeking a $10,000.00 disbursement from the refinancing proceeds and they never consented to the disbursement.

Counsel continued to represent the Debtors after receiving the $10,000.00 disbursement. The vast majority of the time he expended post-disbursement related to the payoff shortfall. He, for example, filed a series of motions seeking to modify the Debtors' plan to address Turner's allegations he had not been paid in full. Counsel boldly seeks payment for such services and argues the $12,000.00 received by him be setoff against his fee claim. Counsel has filed two documents in which he asserts he is entitled to fees: (i) the John Vernon Head's Response to Trustee's Motion to Disgorge Fees Received on or About June 7, 2005 and Petition Approve Payment of Fees[35] ("Petition"); and (ii) the Application by Attorney for Additional Bankruptcy Attorneys' Fees and Costs.[36]

Counsel seeks reimbursement for services performed in the course of the Chapter 13 case and services he classifies as "non-bankruptcy" services. Counsel asserts:

2. The undersigned completed significant, ongoing representation in a variety of serious and difficult legal matters for the debtors with regard to their ongoing business enterprise or their personal lives.

* * *

3 In the opinion of the undersigned, *without these representations, the Plan as approved would not have worked.*[37]

Counsel contends he incurred fees of $20,269.70 for "bankruptcy matters" and $14,013.69 for "nonbankruptcy matters."[38] He asserts the $10,000.00 disbursement and the $2,000.00 paid by the Debtors were credited to non-bankruptcy matters.[39]

The Trustee seeks disgorgement of the $10,000.00 disbursement and application of the sum to satisfy Turner's allowed claim. Counsel is unrepentant for his actions. He contends he is entitled to the $10,000.00, and more, because his services were "extraordinary," warranting his request for fees and costs including "dealing with a recalcitrant creditor, refinancing issues and several periods of cash shortfalls leading to non payment of scheduled plan payments and revisions of plans."[40] Counsel seeks payment of all fees not related to the bankruptcy, as well as additional bankruptcy fees and costs. He seeks additional fees and costs in the amount of $22,283.39,[41] $20,269.70 in additional bankruptcy related fees and $14,013.69 in non-bankruptcy matters (less $12,000.00 credited to the non-bankruptcy fees).[42] Counsel contends the Bankruptcy

---

34. Doc. No. 231, Exh. 10, ¶ 10.

35. Doc. No. 231.

36. Doc. No. 237.

37. Doc. No. 238, ¶¶ 2, 3 (emphasis added).

38. Doc. No. 231, ¶¶ 6, 7.

39. *Id.* at ¶ 8.

40. Doc. No. 237, ¶ 6.

41. Doc. No. 231 dated March 1, 2006.

42. Doc. No. 238 dated March 10, 2006.

Code gives the Trustee "no voice in the decision of the debtors to hire counsel for matters outside the bankruptcy."[43]

Counsel attempts to circumvent his disclosure requirements by classifying some of his services as "non-bankruptcy" services. An objective determination establishes Counsel's services had an impact on the bankruptcy case and are in connection with the Debtors' bankruptcy case. Counsel himself admits all of his services impacted the bankruptcy case:

> The undersigned completed significant, ongoing representation in a variety of serious and difficult legal matters for the debtors with regard to their ongoing business enterprise or their personal lives ... In the opinion of the undersigned, without these representations, the Plan as approved would not have worked. One matter (Treverton—a FLSA lawsuit) would have likely resulted in a default judgment post plan against the business enterprise of the debtors in an amount of approximately $80,000.00 and another, a criminal/traffic allegation, could have resulted in incarceration for Debtor Clay Hackney. Mr. Hackney's incarceration would have had a devastating adverse affect [sic] on the debtor's income and ability to make Plan payments.[44]

All of his services, regardless of his "bankruptcy" or "non-bankruptcy" classifications, were in connection with the Debtor's bankruptcy case and subject to the statutory disclosure and fee application requirements.

Counsel had no authority to request or receive the $10,000.00 disbursement. His request for and receipt of the $10,000.00 disbursement was intentional and contrary to his statutory and ethical duties as counsel for the Debtors. Counsel's receipt of the disbursement created a conflict of interest between him and the Debtors that disqualified him from continuing to represent them. Counsel had a statutory duty to disclose the Debtors' payment to him of $2,000.00. He breached that duty by failing to disclose receipt of the payment. Counsel attempted to conceal his receipt of both the $2,000.00 payment and the $10,000.00 disbursement.[45] The manner in which Counsel credits fees on his firm's books does not alter his statutory disclosure requirements. Counsel has violated fundamental Bankruptcy Code and Rule provisions governing the conduct of attorneys. His actions have created irreconcilable differences with his clients.

### CONCLUSIONS OF LAW

■ Section 329(a) of the Bankruptcy Code requires a debtor's attorney to disclose any compensation paid or agreed to be paid in connection with a bankruptcy case.[46] Federal Rule of Bankruptcy Procedure 2016 implements this disclosure requirement. Rule 2016(b) requires a debtor's attorney to file and transmit to the United States trustee the § 329 statement.[47] The disclosure obligation is ongoing and the attorney must file and transmit a supplemental statement "within 15 days after any payment or agreement not previously disclosed."[48] The disclosure requirements apply to payments received within one year prior to the bankruptcy

---

43. Doc. No. 238, ¶ 16.

44. Doc. No. 238 at ¶¶ 2–3.

45. Doc. No. 231, Exh. 8, pp. 3 & 4.

46. 11 U.S.C. § 329(a) (2005).

47. Fed. R. Bankr.P.2016(b) (2005).

48. *Id.*

filing and for all payments received during the pendency of the case.[49]

■ Section 329 of the Bankruptcy Code *generally* does not authorize the review of compensation for services unrelated to bankruptcy. *In re Keller Fin. Serv. Of Fla., Inc.,* 248 B.R. 859, 877 (Bankr. M.D.Fla.2000). Fees are subject to review if they are incurred for services "in contemplation of" a bankruptcy case, or if the services were rendered "in connection with" a bankruptcy case. *In re Keller,* 248 B.R. at 877. Legal services are "in connection with" a bankruptcy case "if it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case." *In re Keller,* 248 B.R. at 878 (*citing In re Rheuban,* 121 B.R. 368, 378 (Bankr.C.D.Cal.1990); *In re Ostas,* 158 B.R. 312, 321–22 (N.D.N.Y.1993)). Both an objective review of the evidence in this matter and Counsel's own admission establish his services, whether he classified them as "bankruptcy" or "non-bankruptcy" services, had an impact on the bankruptcy. All of Counsel's services were in connection with the Debtors' bankruptcy case and the fees related to his services are subject to review.

■ The legislative history of § 329 reflects Congress' intent to protect against inside arrangements between attorneys and professionals to the detriment of debtors and bankruptcy estates. Congress imposed mandatory fee disclosure requirements to prevent overreaching by debtors' attorneys and give interested parties the ability to evaluate the reasonableness of the fees paid. Anticipating courts would rely on the disclosures to monitor attorney fees paid by a debtor, Congress stated in its legislative history "payments to a debt-

or's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." [50]

■ Disclosure of attorney compensation provides notice to all parties in interest of payments made by the debtor and gives interested parties the opportunity to object to any unreasonable fees paid to any particular attorney. *In re Whaley,* 282 B.R. 38 (Bankr.M.D.Fla.2002) (*citing Hale v. United States Trustee (In re Basham),* 208 B.R. 926, 931 (9th Cir. BAP 1997)). "The disclosure requirements imposed by § 329 are mandatory, not permissive...." *Hale v. United States Trustee,* 208 B.R. at 931. The duty to disclose extends not only to the initial payments received by the debtor's attorney but to all payments made to the attorney, either before or after the case is filed. Voluntary compliance with the disclosure obligation is essential to maintain the efficacy of our bankruptcy system. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs),* 103 F.3d 472, 480 (6th Cir.1996). Compliance is particularly necessary to the administration and disposition of Chapter 7 and Chapter 13 cases involving a voluminous number of relatively small individual cases. *In re Bell,* 212 B.R. 654, 657 (Bankr. E.D.Cal.1997). The disclosure system can properly function only when debtors' attorneys automatically and voluntarily, without prompting from the Court or a party in interest, disclose all payments received from their clients.

■ Counsel was required to file and transmit to the United States Trustee a Rule 2016 Statement disclosing the terms of his compensation agreement with

---

49. 11 U.S.C. § 329(a) and Fed. R. Bankr.P. 2016(b).

50. H.R. REP. No. 95–595, at 329 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 6285.

the Debtors immediately upon substituting in as their counsel. Counsel cannot adopt Witsman's Rule 2016 statement as his own; the filing requirement applies to *"[a]ny attorney* representing a debtor ...." [51] He failed to make disclosure of his compensation agreement with the Debtors in violation of 11 U.S.C. § 329(a) and Rule 2016. All of Counsel's services, as established both through an objective determination and Counsel's statements, were connected to the bankruptcy case and the fees related to his services were subject to the disclosure requirements of 11 U.S.C. § 329 and Federal Rule of Bankruptcy Procedure.2016. Counsel received $2,000.00 from the Debtors directly and $10,000.00 from the closing of the refinancing. Counsel was required to disclose receipt of these funds and failed to make such disclosure in violation of the disclosure requirements of § 329 and Rule 2016.

 Attorneys who fail to disclose compensation timely should suffer strict and quick consequences including the imposition of sanctions or the disgorgement of all fees paid in the case. *In re Campbell,* 259 B.R. 615, 628 (Bankr.N.D.Ohio 2001); *Law Offices of Nicholas A. Franke v. Marcy J.K. Tiffany (In re Lewis),* 113 F.3d 1040, 1045 (9th Cir.1997), *Hale v. United States Trustee,* 208 B.R. at 931; *Mapother,* 103 F.3d at 477. The particular sanction imposed should be "commensurate with the egregiousness of the conduct" and will depend on the particular facts of each case. *Mapother,* 103 F.3d at 479–480.

 Counsel attempts to justify the receipt of the funds through a "set off" argument. Counsel contends he provided valuable services to the Debtors and should be paid for those services. He requests the funds received be considered a credit to the fees he is owed. The disclosure requirements of § 329 and Rule 21016 are absolute. It is irrelevant whether Counsel is owed any fees by the Debtors. Intentional failure to timely disclose fees received cannot later be cured by filing a statement of compensation, particularly after a party in interest objects. The mandatory disclosure requirements would be rendered meaningless if attorneys ignored them until faced with a disgorgement motion.

Counsel has not been candid with the Court. Labeling his services as "nonbankruptcy" services is an attempt to side-step the disclosure requirements. Counsel's lack of candor extends to the affidavit he notarized in support of his claim and his Petition. He had a financial interest in the affidavit he notarized, signed by his employee. He was a party to the Motion to Compel at the time he notarized the document. Florida Statute § 117.108(12) precludes a notary from notarizing a document "if the notary public has a financial interest in or is a party to the underlying transaction." The exception for attorneys provided by Section 117.108(12) does not apply.[52] Counsel, through his Petition, requests payment for additional fees relating to services he has purportedly rendered over the last three years. The Debtors were unaware of additional fees being ac-

---

**51.** 11 U.S.C. § 329(a) *(emphasis added).*

**52.** The statute provides in relevant part: "A notary public who is an attorney does not have a financial interest in and is not a party to the underlying transaction evidenced by a notarized document if he or she notarizes a signature on that document *for a client* for

whom he or she serves as an attorney of record *and he or she has no interest in the document other than the fee paid to him* or her for legal services and the fee authorized by law for services as a notary public." FLA. STAT. ANN. § 117.108(12) (2002) *(emphasis added).*

crued in the bankruptcy case and no statements were sent to the Debtors during their three year relationship with Counsel. Counsel acted in his own best interests during his representation to the detriment of his clients, the creditors, and the bankruptcy estate. He is not entitled to an award of fees and his request is due to be denied.

 This case presents precisely the scenario Congress meant to address in enacting fee disclosure requirements. Counsel failed to make the appropriate disclosures required by Section 329 and Bankruptcy Rule 2016. Counsel failed to disclose his fee arrangement with the Debtors and receipt of fees totaling $12,000.00 in order to avoid scrutiny. He concealed the fees and the conflicts with the Debtors he caused. Counsel's application for fees for all legal matters undertaken on behalf of the Debtors is denied. Counsel created irreconcilable differences with his clients warranting his withdrawal as counsel. The fees of $12,000.00 received by Counsel are due to be disgorged.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the Motion to Strike Response of Chapter 13 Trustee and Amended Motion to Strike filed by Counsel are hereby **DENIED;** and it is further

**ORDERED, ADJUDGED and DECREED** that Trustee's Objection to Petition to Approve Payment of Fees is **SUSTAINED;** it is further

**ORDERED, ADJUDGED and DECREED** that the First Application for Compensation for Additional Bankruptcy Attorney's Fees and Costs for John Vernon Head, Debtor's Attorney is **DENIED;** it is further

**ORDERED, ADJUDGED and DECREED** that the Trustee's Motion to Compel John V. Head, Esquire, Attorney for Debtor, to Disgorge Fees Received on or about June 7, 2005 is hereby **GRANTED;** it is further

**ORDERED, ADJUDGED and DECREED** that John V. Head shall remit payment in the sum of $12,000.00 to Laurie Weatherford, Chapter 13 Trustee, within fourteen (14) days of the entry of this Order; and it is further

**ORDERED, ADJUDGED and DECREED** that should John V. Head fail to comply with the provisions of this Order, additional sanctions may be awarded; and it is further

**ORDERED, ADJUDGED and DECREED** that the Motion to Withdraw filed by Counsel is hereby **GRANTED.**